MAXWELL v CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 216792. Submitted November 16, 2000, at Detroit. Decided April 27, 2001, at 9:15 A.M. Leave to appeal sought.

William E. Maxwell, Jr., brought an action in the Wayne Circuit Court against no-fault insurer Citizens Insurance Company of America, seeking personal protection insurance benefits for rehabilitation for clerical and transportation services provided by his wife in conjunction with his work as an attorney after the injuries he sustained in an automobile accident left him unable to perform the clerical duties and curtailed his driving when he returned to work after the accident. The court, Louis F. Simmons, Jr., J., granted summary disposition for the defendant, ruling that the services for which benefits were sought were not compensable under subsection 3107(1)(a) of the no-fault act, MCL 500.3107(1)(a), as rehabilitation services. The plaintiff appealed.

The Court of Appeals *held*:

Subsection 3107(1)(a) provides in part that personal protection insurance benefits are payable for allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's rehabilitation. "Rehabilitation," for purposes of subsection 3107(1)(a), means restoration to a condition of good health, ability to work, or productive activity. Rehabilitation does not require that one is able to do exactly what one did before an accident, but merely that one is able to perform useful and meaningful work and earn a living by it. In this case, given the plaintiff's postaccident ability to perform remunerative work, albeit different from what it was before the accident, the claimed expenses are not compensable as rehabilitation services.

Affirmed.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — REHABILITATION EXPENSES.

"Rehabilitation," for purposes of the no-fault act provision allowing the payment of personal protection insurance benefits for reasonable charges incurred for an injured person's rehabilitation, means restoration to a condition of good health, ability to work, or productive activity (MCL 500.3107[1][a]).

*Simkins & Simkins, P.C.* (by *Robert B. June*), for the plaintiff.

*Gerald R. Skupin & Associates* (by *Michael D. Smith*), for the defendant.

Before: CAVANAGH, P.J., and TALBOT and METER, JJ.

METER, J. In this case involving the Michigan no-fault act, MCL 500.3101 *et seq.*, plaintiff William E. Maxwell, Jr., appeals as of right from an order granting summary disposition to defendant Citizens Insurance Company of America under MCR 2.116(C)(10). We affirm. The sole question before the court was whether plaintiff, a trial lawyer, could receive compensation for job-related clerical services and transportation provided by his wife as allowable expenses for care, recovery, or rehabilitation under the no-fault act. Before his injury in an automobile accident, plaintiff had been able to perform these services himself; after the injury, he was no longer able to do so.

## I. FACTUAL BACKGROUND

The facts are fully stipulated. Plaintiff sustained serious injuries in an automobile accident on February 1, 1994. At the time, he was a lawyer in sole practice and did all of his own office work, such as filing and typing; he did not receive assistance from employees. In the accident, he suffered a detached retina and head injuries, among other injuries. Because of these injuries, he suffered some impairments in his abilities. Specifically, he "had positive findings of abnormality on an MRI of his brain, . . . a possible seizure disorder, and . . . possible brain injury with mild cognitive deficits in the areas of

memory processes and relational concepts." Plaintiff is not, however, mentally incapacitated, and "[w]hile he has a left-hand neuropathy and bilateral thoracic outlet syndrome, he does not suffer from any paralysis of any limbs."

Because of his impairments, plaintiff's treating neurologist prescribed, and his treating neuropsychologist recommended, that plaintiff "receive[] assistance in performing tasks necessary to returning to his law practice, including such tasks as opening files, reviewing the mail, scheduling client appointments, typing correspondence and other legal documents, filing, paying bills, bookkeeping and computer record functions, and reviewing file status for upcoming deadlines and dates."

Plaintiff also experiences limitations, due to the accident injuries, in his ability to drive. As part of his law practice, he travels by automobile for depositions and court appearances, not only in the Metro Detroit area where he practices, but also throughout Michigan and even as far away as Florida. He is still able to do the Metro Detroit driving himself, but because of the impairments, he needs to be driven on longer trips. For two periods totaling about a year and a half, plaintiff's neurologist restricted plaintiff's driving on an involuntary basis and prescribed transportation services for him; now, plaintiff "has been placed on a voluntary driving restriction for occasions when he feels dizzy or fatigued." Plaintiff "voluntarily restricts his long-distance driving activities because of occasional 'black outs' [sic] in attention and the onset of numbness in his arms."

Plaintiff received help with the office assistance and transportation services from professional agen-

cies and from his wife; both the agencies and his wife charged him for these services. The parties stipulated "that the need for the services arose from [plaintiff's] February 1, 1994 motor vehicle accident, that timely claims for reimbursement for the services were made, that appropriate documentation was submitted, and that the services are presumed medically necessary." They further stipulated that because of time bars for filing claims, plaintiff could not recover these expenses as wage loss under MCL 500.3107(1)(b) or as replacement services under MCL 500.3107(1)(c). They further stipulated that plaintiff could not recover the expenses as wage loss for 1995 or 1996 for the alternative reason that plaintiff had over $100,000 in taxable income for each of these years.

The parties agreed that the "value of the claims submitted through May 29, 1998 for attendant care/transportation services related to [plaintiff's] work . . . [was] $70,984."

The fact that plaintiff could not, as the parties stipulated, recover his expenses as wage loss led to the legal dispute between them. The issue was whether the expenses were reimbursable as care, recovery, or rehabilitation under MCL 500.3107(1)(a). The trial court ruled that because the services in dispute "were not preparing him for future employment, "but, rather, . . . furthering his present employment," they were not compensable as "rehabilitation" expenses under [the statute]."

## II. STANDARD OF REVIEW

The parties stipulated the facts in this case, and the trial court ruled solely on an issue of law. This Court

reviews a trial court's conclusions of law de novo. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). Moreover, this Court reviews issues of statutory construction, as well as a trial court's grant of summary disposition, de novo. *Stevenson v Reese*, 239 Mich App 513, 516; 609 NW2d 195 (2000); *Stanton v Battle Creek*, 237 Mich App 366, 368; 603 NW2d 285 (1999).

### III. EXPENSES RECOVERABLE FOR "REHABILITATION"

MCL 500.3107(1)(a) states, in relevant part, as follows:

> [P]ersonal protection insurance benefits are payable for the following:
>
> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

Plaintiff contends that the expenses at issue here were recoverable as services relating to "rehabilitation" under this statutory provision. He contends that this Court should regard "rehabilitation" as a technical term with a specialized legal meaning and rely on the Michigan and federal rehabilitation service statutes, specifically, MCL 395.82 and 29 USC 723(a), when determining the meaning of the word. He argues that under these statutes, "vocational rehabilitation" encompasses expenses incurred in transporting a person to work and assisting the person during his work. Defendant, by contrast, contends that the term "rehabilitation" should be given its ordinary dictionary meaning without reference to MCL 395.82 or 29 USC 723(a) and that this meaning encompasses

only training or assistance in *preparing* a person for employment and excludes assistance given *during* actual employment. This presents an issue of first impression in Michigan.

### A. THE TERM "REHABILITATION" SHOULD BE GIVEN ITS ORDINARY MEANING

We agree with defendant that the term "rehabilitation" should be given its ordinary dictionary definition. Indeed, our courts consistently use ordinary dictionary definitions in construing the no-fault act.

In *Bailey v DAIIE*, 143 Mich App 223, 225-226; 371 NW2d 917 (1985), this Court, in the context of deciding whether the no-fault act encompassed expenses for vocational rehabilitation in addition to physical rehabilitation, held that the scope of recoverable benefits under MCL 500.3107(1)(a) is to be determined by reference to the ordinary dictionary meaning of "rehabilitation." This Court stated:

> It is a cardinal rule of statutory interpretation that the reviewing court is to give effect to the intent of the Legislature. Words should generally be given their ordinary meanings. If the language of the statute is clear, it is assumed that the Legislature intended the plainly expressed meaning, and the statute must be enforced as written.
>
> The American Heritage Dictionary (New College Ed, 1985) defines rehabilitate as "1. To restore (a handicapped or delinquent person) to useful life through education and therapy." 1983 OAG No. 6129, p 50 (February 24, 1983) holds that the term "rehabilitation," given its ordinary meaning, should be interpreted to include vocational rehabilitation. [*Bailey, supra* at 225-226 (citations omitted).]

In *Bailey,* the vocational rehabilitation allowed was training for a new job for a steelworker who had injured his shoulder. *Id.* at 224.

As mentioned in *Bailey, id.* at 226, the Attorney General of Michigan has authored an opinion regarding the meaning of the term "rehabilitation" in the no-fault act. The Attorney General noted that "[i]t is a well-established rule of statutory construction that words of a statute are to be given their plain and ordinary meaning in the absence of contrary legislative intent" and opined that this was how "rehabilitation" should be construed in the no-fault act. See OAG, 1983-1984, No 6129, p 50, 52 (February 24, 1983). In answering a legislator's question concerning "[w]hat materials and services are included in the scope of rehabilitation benefits," the Attorney General stated that

> the statutory term "rehabilitation" under . . . § 3107(a), in accordance with its plain and ordinary meaning, must be interpreted in a broad sense to embrace comprehensive care and services reasonably necessary to restore the injured person not only to a condition of physical health, in keeping with the limitation of his or her physical disability, but also to restore that person to useful and constructive activity through occupational retraining if necessary. [OAG No 6129, *supra* at 53.]

Other cases also suggest that ordinary dictionary definitions should be used in construing the no-fault act. In *Royal Globe Ins Cos v Frankenmuth Mut Ins Co,* 419 Mich 565, 575; 357 NW2d 652 (1984), the Supreme Court used a literal approach to defining an "occupant" of a motor vehicle for purposes of the no-fault act. In doing so, the Court said that "the goal of the no-fault act which seeks to provide victims of

motor vehicle accidents with *prompt* reparation for their losses . . . is better served . . . by the certainty and predictability that a literal construction of the word "occupant" will yield, when it is assigned its primary and generally understood meaning." *Id.* at 575 (emphasis in original).

In *Transport Ins Co v Home Ins Co*, 134 Mich App 645, 651; 352 NW2d 701 (1984), this Court construed the meaning of a "motor vehicle owned, operated, maintained, or used by [a] nonresident" in the no-fault act: "Under general principles of statutory construction, we must construe a statute according to the plain and ordinary meaning of its words. . . . Only if the language is ambiguous do we look to other factors in attempting to ascertain the purpose behind the legislation."

In light of these authorities, defendant is correct that "rehabilitation" should be interpreted according to its ordinary dictionary meaning. As noted by defendant, there is simply no authority for plaintiff's proposition that the term should be interpreted under the no-fault act in the identical way that it is interpreted under the Michigan and federal rehabilitation service statutes. See MCL 395.82 and 29 USC 723(a). Plaintiff contends that the term must be interpreted identically under both the no-fault act and the rehabilitation service statutes because of the following provision:

> If an insurer or self-insurer is responsible under applicable state or federal auto insurance law for the provision of vocational rehabilitation services to an injured person, and the services are provided by the state board, the state board shall collect fees from the responsible insurer or self-insurer in an amount equal to the full costs of providing the vocational rehabilitation services. [MCL 395.84(3).]

Plaintiff contends that "[g]iven this reimbursement provision, it would be bizarre to conclude that the [L]egislature intended the term 'rehabilitation' in the [no-fault act] to have *narrower* scope than the sub-term "vocational rehabilitation" as used [throughout] the Rehabilitation Act" (emphasis in original). We do not find plaintiff's argument persuasive. Indeed, the terms are employed in two separate statutes that have different overall purposes. MCL 395.84(3) merely indicates that the state is entitled to reimbursement from an insurer for the amount the insurer was required to pay. The statute certainly does not prohibit the state from providing a greater amount of services than that for which an insurer was required to pay, regardless of whether the expenses for the services are called "vocational rehabilitation expenses" or merely "rehabilitation expenses" in the applicable statutes. We reject plaintiff's argument that the term "rehabilitate" should be construed under the no-fault act in the exact manner that it is construed under the state and federal rehabilitation services statutes.

## B. THE ORDINARY MEANING OF "REHABILITATE"

Both parties assume that if "rehabilitation" receives its ordinary dictionary meaning, it will encompass only services needed to get plaintiff back into condition to work, and the services he seeks to have paid here will be disallowed. For this reason, plaintiff goes to some length to assert that a definition of "rehabilitation" other than the ordinary dictionary definition is appropriate. We note, however, that dictionaries also define rehabilitate as "4. To restore formally to former capacity. . . ." See *Random House Webster's College Dictionary* (1997), p 1096. This definition would

arguably encompass the disputed expenses here, because plaintiff's "capacity" before the automobile accident was being able to operate a law practice without having to pay for support services. However, the Supreme Court in *Royal Globe Ins, supra* at 573, 575, citing *AT&T v Employment Security Comm*, 376 Mich 271, 279; 136 NW2d 889 (1965) (O'HARA, J.), indicated that a word in a statute should be assigned its primary and generally understood meaning that is consistent with the purpose of the statute. Here, the primary and generally understood meaning of "rehabilitate" is "1. To restore or bring to a condition of good health, ability to work, or productive activity." See *Random House Webster's College Dictionary* (1997), p 1096. Significantly, the Court in *Bailey, supra* at 225-226, and the Attorney General in OAG No 6129, *supra* at 52 referred to this primary and generally understood meaning. Accordingly, we conclude that this meaning is indeed the appropriate meaning to be assigned to the term "rehabilitate" under the no-fault act.

### C. THE APPLICABILITY OF THE DEFINITION TO PLAINTIFF'S SITUATION

The stipulated facts show that plaintiff is able to work as an attorney and that for the two years before the litigation was filed, he earned over $100,000 each year. He returned to work on a part-time basis two weeks after the accident and has continued working since that time. He has a driver's license and is able to drive himself to job tasks in the metropolitan area in which he lives. He does, however, require help with transportation to parts of Michigan outside this metropolitan area and to other parts of the country;

he also requires help with detailed clerical work in his office. This need for assistance does not render plaintiff disabled or require that he have the services performed in order to be "rehabilitated" in the ordinary sense of the word. Indeed, as discussed above, "rehabilitation" does not require that one is able to do exactly what one did before an accident, but merely that one is able to perform useful and meaningful work and earn a living by it. In *Kondratek v Auto Club Ins Ass'n*, 163 Mich App 634, 636-637; 414 NW2d 903 (1987), for example, this Court held that an insured whose vocal cords were permanently damaged in an accident and who would never be able to talk normally again could receive vocational rehabilitation benefits to become a sign language interpreter. This Court did not note what the plaintiff in that case had done before the accident, but she was obviously training for a position different from the one she had held before the accident. In the instant case, the nature of plaintiff's practice is somewhat different from its nature before the accident. However, he *has* been able to return to work, and to do so successfully, earning over $100,000 a year. Given plaintiff's ability to perform remunerative work, we hold that under the specific circumstances of this case, the claimed expenses are not compensable under the no-fault act as vocational rehabilitation services.[1]

---

[1] We express no opinion regarding whether the claimed expenses are compensable as wage loss under MCL 500.3107(1)(b). We further note that plaintiff makes a cursory statement on appeal that the disputed expenses in this case were recoverable as "care" or "recovery" expenses under MCL 500.3107(1)(a). Plaintiff does not sufficiently develop this argument for our review. Nonetheless, we disagree that the expenses were recoverable as "care" or "recovery" expenses.

Given our resolution of this issue, plaintiff is not entitled to statutory interest. Nor is he entitled to attorney fees, because defendant's denial of benefits was reasonable.

Affirmed.