# STATE OF MICHIGAN

# COURT OF APPEALS

---

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

       Plaintiff/Cross-Defendant-Appellee,

v

MICHAEL T. ROSS,

       Defendant/Cross-Plaintiff-
Appellant.

UNPUBLISHED
July 25, 2017

No.  332597
Oakland Circuit Court
LC No.  2015-146559-CZ

---

Before:  GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

In this case involving first-party benefits under the no-fault act, MCL 500.3101 *et seq.*, plaintiff/cross-defendant, Liberty Mutual Fire Insurance Company, moved for summary disposition under MCR 2.116(C)(8), (C)(9), and (C)(10), asserting that defendant/cross-plaintiff, Michael Ross, had failed to state a valid defense to its claims against him, that Ross had failed to state a claim upon which relief could be granted in his counterclaim, and that, in any event, summary disposition was appropriate as to both claims because there was no genuine issue as to any material fact and it was entitled to judgment as a matter of law.  The trial court agreed and granted summary disposition on all claims in Liberty Mutual's favor.  Ross appeals by right.  We affirm the trial court's grant of summary disposition on Liberty Mutual's claim, but reverse the trial court's grant of summary disposition on Ross's counterclaim and remand for further proceedings consistent with this opinion.

## I.  BASIC FACTS

On January 30, 2010, Ross sustained a traumatic brain injury as a result of a motor vehicle accident.  Liberty Mutual, his no-fault insurer, paid personal protection injury (PIP) benefits to him, including wage loss benefits.  At some point, Liberty Mutual encouraged Ross to apply for Social Security Disability, and he did so.  Ross acknowledges that he was approved for Social Security Disability and received disability benefits as a result.  The record reflects that the Social Security Administration found Ross disabled as of January 30, 2010 and that, as a result of his disability, he was entitled to benefits starting in July 2010.

-1-

When Liberty Mutual learned that Ross was receiving disability benefits, it sent him a letter stating that under MCL 500.3109(1), he was required to reimburse it $35,501.60. Ross did not reimburse Liberty Mutual, so it filed suit against him, seeking reimbursement of the $35,501.60 it had paid Ross for wage loss benefits.

In response, Ross filed an answer, a number of affirmative defenses, and a counterclaim. Relevant to the arguments raised on appeal, Ross asserted as an affirmative defense that Liberty Mutual's "cause of action is based upon illegal conduct," so "it is barred by the wrongful conduct rule." Further, in his counterclaim, he alleged Liberty Mutual was liable for breach of contract and unjust enrichment premised on Liberty Mutual's failure to pay "reasonable and necessary expenses related to" rehabilitation. Ross also asserted that Liberty Mutual had refused to pay the claim for rehabilitation expenses on a timely basis, so he was entitled to 12% interests on the claim as well as reasonable attorney fees.

On October 5, 2015, Liberty Mutual filed a motion for summary disposition under MCR 2.116(C)(8), (C)(9), and (C)(10). Liberty Mutual argued that it was entitled to summary disposition under MCR 2.116(C)(9) because Ross had failed to raise any substantive defense to its pleadings and because Ross admitted he had a no-fault policy with Liberty Mutual, admitted receiving benefits from Liberty Mutual, and admitted receiving an award from the Social Security Administration. Liberty Mutual also asserted that it was entitled to summary disposition under MCR 2.116(C)(10) because Ross admitted to everything that is necessary for Liberty Mutual to obtain a judgment in its favor on its complaint. Finally, Liberty Mutual argued that it was entitled to summary disposition under MCR 2.116(C)(8) because Ross's counterclaim was without merit given that Liberty Mutual had paid and was still paying all compensable and related bills reasonably and necessarily incurred as a result of the accident. Thereafter, the trial court granted summary disposition in Liberty Mutual's favor.

## II. JURISDICTION

### A. STANDARD OF REVIEW

Liberty Mutual argues that we lack jurisdiction over this matter because the appeal is not from a final order and was not timely filed. We review de novo questions of jurisdiction. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 367-368; 775 NW2d 618 (2009).

### B. ANALYSIS

Generally, we "have jurisdiction to hear appeals as of right that are filed within 21 days of a final order or judgment." *Barnard Mfg Co, Inc*, 285 Mich App at 368; MCR 7.204(A)(1)(a). However, if a party files a motion for reconsideration "within 21 days of the final order or judgment, the appeal may be filed within 21 days of the order deciding that motion." *Barnard Mfg Co, Inc*, 285 Mich App at 368, quoting MCR 7.204(A)(1)(b). Here, the trial court issued an order granting summary disposition in Liberty Mutual's favor on December 18, 2015, and Ross filed a timely motion for reconsideration of that order. On January 8, 2016, while the motion for reconsideration was pending, the trial court entered a judgment in favor of Liberty Mutual in the amount of $35,501.60. Thereafter, on April 4, 2016, the trial court denied the motion for

reconsideration. Ross filed a claim of appeal on April 22, 2016, i.e., within 21 days of the order denying reconsideration. Accordingly, we conclude that Ross's appeal was from a final order, i.e., the opinion and order granting summary disposition on all claims, and it was timely given that it was filed within 21 days of the trial court's denial of Ross's motion for reconsideration.

### III. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Ross argues that the trial court erred by granting summary disposition on all claims in Liberty Mutual's favor. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc*, 285 Mich App at 369. "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint" and all "well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "When deciding a motion brought under this section, a court considers only the pleadings." *Id.* at 119-120. Similarly, "[a] motion under [MCR 2.116(C)(9)] is analogous to one brought pursuant to MCR 2.116(C)(8) in that both motions are tested by the pleadings alone, with the court accepting all well-pleaded allegations as true." *In re Smith Estate*, 226 Mich App 285, 288; 574 NW2d 388 (1997). However, given that the parties and the trial court both relied on documentary evidence, this Court will "proceed under the standard of review applicable to a motion made under MCR 2.116(C)(10)." *BC Tile & Marble Co, Inc v Multi Building Co, Inc*, 288 Mich App 577, 582; 794 NW2d 76 (2010). In reviewing a (C)(10) motion, a court considers "affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Greene v A P Prods, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006) (citations and quotation marks omitted). The motion "tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011).

### B. LIBERTY MUTUAL'S CLAIM

Ross first argues that the trial court erred in granting summary disposition on Liberty Mutual's $35,501.60 claim for reimbursement. We disagree.

Under MCL 500.3109(1),[1] Ross is required to reimburse Liberty Mutual for social security disability benefits arising from the January 2010 accident that are duplicative of the PIP benefits arising from the same accident and the same injury. However, Ross argues that Liberty Mutual's claim is barred by the wrongful-conduct rule. Generally, a plaintiff's claim will be

---

[1] MCL 500.3109(1) provides:

> Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury under this chapter.

barred if it is based on the plaintiff's "own illegal conduct." *Orzel v Scott Drug Co*, 449 Mich 550, 558-560; 537 NW2d 208 (1995). Nevertheless, "[t]he mere fact that a plaintiff engaged in illegal conduct . . . does not mean that his claim is automatically barred under the wrongful-conduct rule." *Id*. at 561. "To implicate the wrongful-conduct rule, the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute." *Id*.

Ross claims that Liberty Mutual made him apply for social security disability benefits even though Liberty Mutual believed he was capable of working. Ross produced documentary evidence indicating that in order to qualify for social security disability benefits, an individual must not be able to do the work he or she did before and must not be able to adjust to other work because of his or her medical conditions. He also introduced excerpts of Liberty Mutual's claim log that showed that at the same time that Liberty Mutual was assisting Ross in his job search it was insisting that he also apply for social security disability. Finally, Ross submitted an affidavit stating that Liberty Mutual required him to apply for social security disability benefits even though he felt that he was still employable.

Under 42 USC 1383a, provides that "whoever"

(1) knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit under this subchapter,

(2) at any time knowingly and willfully makes or causes to be made any false statement or representation of a material fact for use in determining rights to any such benefit,

(3) having knowledge of the occurrence of any event affecting (A) his initial or continued right to any such benefit, or (B) the initial or continued right to any such benefit of any other individual in whose behalf he has applied for or is receiving such benefit, conceals or fails to disclose such event with an intent fraudulently to secure such benefit either in a greater amount or quantity than is due or when no such benefit is authorized, [or]

* * *

(5) conspires to commit any offense described in any of paragraphs (1) through (3),

shall be fined under Title 18, imprisoned not more than 5 years, or both, . . . .

Ross appears to contend that because he felt he was able to work and because Liberty Mutual also believed he was able to work (as demonstrated by its efforts to find a job for him), Liberty Mutual knowingly and willfully caused him to lie on his social security disability application and therefore violate 42 USC 1383a. Ross, however, has submitted no evidence showing that Liberty Mutual required him to lie on his application, nor has he directed this Court's attention to any false or misleading statements in his actual application. Although he asserts that discovery is ongoing, if there were false or misleading statements in the application, or if Liberty Mutual

-4-

required him to make false or misleading statements in his application, then—in an effort to avoid summary disposition—Ross could have averred such facts in a supporting affidavit.

Therefore, even viewing the record facts in the light most favorable to Ross, i.e., that Liberty Mutual required him to apply for Social Security Disability benefits even when he thought he was employable, given that there is no actual evidence of fraud in the social security disability application, we conclude that the wrongful-conduct rule does not bar Liberty Mutual's claim. See *Orzel*, 449 Mich 561.

In sum, the trial court did not err in granting Liberty Mutual summary disposition on its claims against Ross.

## C. ROSS'S COUNTERCLAIM

Ross also argues that the trial court erred in dismissing his counterclaim based on Liberty Mutual's alleged failure to pay reasonable and necessary rehabilitation costs. Under MCL 500.3107(1)(a), PIP benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." In *Douglas v Allstate Ins Co*, 492 Mich 241, 277-278; 821 NW2d 472 (2012), our Supreme Court explained that "MCL 500.3107(1)(a) imposes four requirements that an insured must prove before recovering PIP benefits for allowable expenses: (1) the expense must be for an injured person's care, recovery, or rehabilitation, (2) the expense must be reasonably necessary, (3) the expense must be incurred, and (4) the charge must be reasonable." It is well settled that rehabilitation expenses include vocational rehabilitation. See *Bailey v Detroit Auto Inter-Ins Exch*, 143 Mich App 223, 227-228; 371 NW2d 917 (1985) (holding that " 'rehabilitation' should be construed to include vocational rehabilitation as an allowable expense under § 3107(a) of the Michigan no-fault act"); *Tennant v State Farm Mut Auto Ins Co*, 143 Mich App 419, 428; 372 NW2d 582 (1985) (noting that 'rehabilitation' includes vocational rehabilitation); *Kondratek v Auto Club Ins Ass'n*, 163 Mich App 634, 637; 414 NW2d 903 (1987) (same); *Maxwell v Citizens Ins Co of America*, 245 Mich App 477, 482-483; 628 NW2d 95 (2001) (same). In *Maxwell*, this Court stated that "the primary and generally understood meaning of 'rehabilitate' is '1. To restore or bring to a condition of good health, ability to work, or productive activity.' " *Id*. at 486, quoting Random House Webster's College Dictionary (1997), p. 1096. Similarly, in *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 534-535; 697 NW2d 895 (2005), our Supreme Court stated that as used in § 3107(1)(a):

> "Recovery" is defined as "restoration or return to any former and better condition, esp. to health from sickness, injury, addiction, etc." Random House Webster's College Dictionary (2001). "Rehabilitate" is defined as "to restore or bring to a condition of good health, ability to work, or productive activity." *Id*. Both terms refer to restoring an injured person to the condition he was in before sustaining his injuries. Consequently, expenses for "recovery" or "rehabilitation" are costs expended in order to bring an insured to a condition of health or ability sufficient to resume his preinjury life. Because "recovery" and "rehabilitation" are necessary only when an insured has been injured, both terms refer to products, services, and accommodations that are necessary *because* of injuries sustained through the use of a motor vehicle.

Therefore, vocational rehabilitation should restore an insured to the condition he was in before sustaining his injuries. "Reasonably necessary" expenses are assessed using an objective standard that looks to actual necessity, not just an individual's subjective belief "that a service is necessary for an injured person's care, recovery, or rehabilitation." *Krohn v Home–Owners Ins Co*, 490 Mich 145, 159-160; 802 NW2d 281 (2011). Generally, it is a question of fact whether the services or products provided were reasonably necessary. *Id*. at 157-158.

As an initial matter, the trial court determined that Ross had quit his job as an emergency room physician two years before the motor vehicle accident and was only working as an emergency room independent contractor. The court concluded that as a result Ross wanted Liberty Mutual "to go beyond restoring him to a position he was in prior to the accident" because he wanted Liberty Mutual "to pay all related costs to completely retrain him in a career that he abandoned more than two years prior to the accident." The record evidence, however, viewed in the light most favorable to Ross, plainly shows that he was employed as an emergency room physician on the date of the accident, albeit on an independent contractor basis.[2] There was also record evidence allowing for an inference that Ross maintained both his continuing education units (CEUs) and his medical certifications.[3] Therefore, the trial court erred in granting summary disposition on Ross's counterclaim on this basis.

Next, Liberty Mutual argues that we should affirm the trial court's grant of summary disposition because the expenses claimed are not for reasonably necessary vocational rehabilitation services, products, or accommodations given that they are merely the costs that any physician would have to pay in order to maintain his or her professional license. Ross, however, asserts that the costs were for reasonably necessary services, products, or accommodations because the accident prevented him from practicing as an emergency room physician and would continue to do so until he was up-to-date on his CEUs and certifications, and until he had completed a supervised mentorship program. He supported his claim with a large quantity of documentary evidence, including (1) a letter from the nurse case manager, who explicitly stated that the re-credentialing materials were "part of the cognitive re-training therapy" and that a specialized indemnity insurance policy for the supervised mentorship was party of the vocational rehabilitation process because "but for the traumatic brain injury" Ross "would not be required to carry such a policy" (2) a report from Ross's speech pathologist that stated that "the CEU work has been utilized for therapy purposes in addition to licensing requirements," and (3)

---

[2] The nursing plan stated that Ross's work history included "Medical Doctor: Emergency, board certified. Continuous employment and practice in hospital and clinic based Emergency Medicine since 1982 to date of MVA."

[3] The vocational rehabilitation report/plan stated that Ross required continuing education units dating back to 2010, which viewed in the light most favorable to Ross indicates that before the 2010 accident he was current with his continuing education units. The report/plan further stated that Ross was approximately four years behind in his certification coursework, which again suggests that he was current with his certification coursework before the accident given that the report was authored in 2014 and the accident occurred in 2010.

prescriptions for various CEUs, mentorships, re-certifications, and memberships in medical associations from Dr. Steven Hinderer, his treating physician. Accordingly, on this record, we are not prepared to say that all of the expenses were not vocational rehabilitation expenses reasonable and necessary to return him to his preinjury condition. Rather, this is a question better suited to a jury. See *Nelson v Detroit Inter-Ins Exchange*, 137 Mich App 226, 231; 359 NW2d 536 (1984). Accordingly, on this record summary disposition is not appropriate on the ground that the expenses were not for reasonably necessary vocational rehabilitation services, products, or accommodations.

In conclusion, viewed in the light most favorable to Ross, the record shows he was working as an emergency room physician on the date of the accident and that there is a jury question with regard to whether the claimed expenses were reasonably necessary. Accordingly, on the record before us, the trial court erred in granting Liberty Mutual summary disposition on Ross's counterclaim.[4]

We affirm the trial court's grant of summary disposition on Liberty Mutual's claim against Ross, but we reverse the trial court's grant of summary disposition on Ross's counterclaim and remand for further proceedings. On remand, the trial court should address Liberty Mutual's claim that the claimed expenses were not incurred within the meaning of MCL 500.3107(1)(a). We do not retain jurisdiction. No taxable costs, neither party having prevailed in full. MCR 7.219(A).

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

[4] Liberty Mutual also asserts that we should affirm the trial court because the expenses Ross claims Liberty Mutual must pay were not actually incurred. In order to qualify as "allowable expenses" under MCL 500.31074(1)(a), the expenses must also have been incurred. The requirement that expenses be incurred means that an insurer is only required to pay a claimant "upon submission of evidence that services were *actually rendered* and of the *actual cost expended*." *Douglas*, 492 Mich at 266–267. However, we decline to address this argument given that the trial court did not address its merits. See *Miller v Inglis*, 223 Mich App 159, 168; 567 NW2d 253 (1997).