# STATE OF MICHIGAN

# COURT OF APPEALS

MIC GENERAL INSURANCE CORP,

Plaintiff-Appellant,

v

MICHIGAN MUNICIPAL RISK
MANAGEMENT AUTHORITY and
ELIZABETH KEHN,

Defendants-Appellees.

UNPUBLISHED
October 18, 2018

No.  341766
Mecosta Circuit Court
LC No.  17-024112-NF

Before:  SAWYER, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

In the present priority dispute arising under Michigan's no-fault act, MCL 500.3101 *et seq.*, plaintiff appeals the trial court's opinion and order granting defendant Michigan Municipal Risk Management Authority's (MMRMA) motion for summary disposition under MCR 2.116(C)(10) based on its holding that MMRMA was exempt from priority under MCL 500.3114(2)(c).  We reverse and remand for further proceedings consistent with this opinion.

## I.  FACTS

On November 1, 2016, defendant Elizabeth Kehn was severely injured as a result of a motor vehicle accident that occurred while she was a passenger in a medical transportation vehicle (the "vehicle").  The vehicle was owned and operated by the Mecosta County Commission on Aging (MCCOA) and was insured by defendant MMRMA, a group self-insurance pool created by intergovernmental contract, MCL 124.1, *et seq*.  MCCOA is a department of Mecosta County and, among other services, provides medical transportation to qualified senior citizen residents of the County.  Ms. Kehn submitted a claim for personal protection insurance benefits to plaintiff, her insurer.  Plaintiff alleges that it paid Ms. Kehn's claim for reasonable medical expenses in the amount of $200,587.22.

Plaintiff initiated the present action on May 9, 2017, seeking reimbursement from MMRMA on the ground that MMRMA is an insurer of higher priority under MCL 500.3114(2).  MMRMA filed a motion for summary disposition under MCR 2.116(C)(7), arguing two theories under which the action was statutorily barred: (1) that MCL 500.3114(2) was wholly inapplicable because MCCOA was not "in the business of transporting passengers," and (2) that MCCOA was exempt under MCL 500.3114(2)(c) or (d) because the vehicle was either "[a] bus

-1-

operating under a government sponsored transportation program" or "[a] bus operated by or providing service to a nonprofit organization." In its response, plaintiff disputed these theories and sought summary disposition under MCR 2.116(I)(2).

On December 7, 2017, the trial court issued an opinion and order granting MMRMA's motion for summary disposition under MCR 2.116(C)(10) as opposed to (C)(7).[1] The trial court held that MCL 500.3114(2) applied, as the vehicle at issue was "operated in the business of transporting passengers." In so concluding, the trial court rejected MMRMA's position that the language "operating in the business" necessarily connoted a for-profit, commercial endeavor. However, the trial court ultimately concluded that MMRMA was exempt from liability under MCL 500.3114(2)(c), as the vehicle involved was a "bus operating under a government sponsored transportation program." In construing the meaning of the word "bus," the trial court declined to adopt the narrow definition advocated by plaintiff requiring that a vehicle carry 16 or more passengers, as set forth in the Motor Vehicle Code, MCL 257.4b. Rather, the trial court adopted the broad dictionary definition of "a long motor vehicle for carrying passengers." The trial court held that, because Mecosta County "sponsors the transportation services through the [MCCOA] – a commission created, staffed, and funded by the County," the exemption under MCL 500.3114(2)(c) applied. Accordingly, the trial court concluded that MMRMA was entitled to summary disposition because it was not an insurer of higher priority than plaintiff.

## II.  STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NWd 520 (2012). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120 (citation omitted).

The present case concerns the interpretation of Michigan's no-fault insurance act. Statutory interpretation is an issue of law that this Court reviews de novo. *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002). "The primary goal when construing a statute is to ascertain and give effect to the intent of the Legislature." *Proudfoot v State Farm Mut Ins Co*, 254 Mich App 702, 708; 658 NW2d 838 (2003), aff'd in part and rev'd in part 469 Mich 476 (2003). In determining the Legislature's intent, courts must first evaluate the statutory language itself. *Id*. Clear and unambiguous language must be applied as written in accordance with its common and ordinary meaning. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012); *Cruz*, 466 Mich at 594. Only when a statute is ambiguous

---

[1] The trial court stated that although defendant's motion should have been brought under MCR 2.116(C)(10), this error was not fatal to the motion because "the substance of the dispute [was] sufficiently clear to allow the nonmovant to understand the issues and fully respond."

is judicial construction appropriate. *Proudfoot*, 254 Mich App at 708. A statute is ambiguous only when it irreconcilably conflicts with another provision or when it is equally susceptible to more than one reasonable interpretation. *Village of Holly v Holly Twp*, 267 Mich App 461, 474; 705 NW2d 532 (2005).

## III. DISCUSSION

### A. APPLICABILITY OF MCL 500.3114(2)

Ordinarily, an individual injured as a result of a motor vehicle accident must apply for benefits under his or her own no-fault insurance policy:

> Sections 3101(1) and 3114(1) set forth the general rule of priority: A no-fault insurance policy, which owners of vehicles required to be registered in the state must maintain as security, covers all injuries arising from the use of motor vehicles suffered by persons named in the policy. In other words, the general rule is that one looks to a person's own insurer for no-fault benefits unless one of the statutory exceptions, subsections 2, 3, and 5, applies.

*Parks v Detroit Auto Inter-Ins Exch*, 426 Mich 191, 202-203; 393 NW2d 833 (1986); see also *Spencer v Citizens Ins Co*, 239 Mich App 291, 301; 608 NW2d 113 (2000). The exception at issue in the present case, MCL 500.3114(2), shifts that priority as follows to the insurer of the motor vehicle involved in the accident:

> A person suffering accidental bodily injury while an operator or a passenger of a motor vehicle *operated in the business of transporting passengers* shall receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle. *This subsection does not apply to a passenger in any of the following*, unless the passenger is not entitled to personal protection insurance benefits under any other policy:
>
> * * *
>
> (c)     A bus operating under a government sponsored transportation program.
>
> (d)     A bus operated by or providing service to a nonprofit organization. [MCL 500.3114(2) (emphasis added).]

On appeal, MMRMA contends that, because MCCOA, and more broadly Mecosta County, is not "in the business of transporting passengers," the trial court erred in concluding that MCL 500.3114(2) applies under the present facts. We disagree.

As an initial matter, although MMRMA did not file a cross-appeal regarding this determination, " 'a cross-appeal is not necessary to urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the lower court or tribunal.' " *Vandenberg v Vandenberg*, 253 Mich App 658, 663; 660 NW2d 341 (2002), quoting *Boardman v Dep't of State Police*, 243 Mich App 351, 358; 622 NW2d 97 (2000); see also *Cacevic v*

*Simplimatic Engineering Co*, 463 Mich 997, 997; 625 NW2d 784 (2001). Accordingly, this issue is preserved for review by this Court.

MMRMA primarily contends that MCL 500.3114(2) applies only in the for-profit, commercial context and therefore does not extend to MCCOA's nonprofit transportation service, which accounts for only a miniscule portion of Mecosta County's revenue and budget. In support of its position, MMRMA relies on case law referencing the Legislature's intent to apply MCL 500.3114(2) in commercial situations:

> The exceptions in § 3114(2) and (3) relate to "commercial" situations. It was apparently the intent of the Legislature to place the burden of providing no-fault benefits on the insurers of these motor vehicles, rather than on the insurers of the injured individual. This scheme allows for predictability; coverage in the "commercial" setting will not depend on whether the injured individual is covered under another policy. A company issuing insurance covering a motor vehicle to be used in a (2) or (3) situation will know in advance the scope of the risk it is insuring. [*State Farm Mut Auto Ins Co v Sentry Ins*, 91 Mich App 109, 114-115; 283 NW2d 661 (1979).]

However, *Sentry* did not involve the application of subsection 3114(2) – rather, the central issue was defining the scope of vehicle ownership under the no-fault act. *Id*. at 112. *Sentry*'s reference to subsection 3114(2) was made as the Court examined the Legislature's overall intent in enacting the no-fault act. *Id*.

MMRMA also relies upon this Court's observation in *Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 701 n 5; 671 NW2d 89 (2003), that a previous unpublished opinion "examined the term 'business' within subsection 3114(2) and found that it signified a for-profit endeavor." Citing *Lampman v Workman*, unpublished per curiam opinion of the Court of Appeals, issued March 22, 2002 (Docket No. 225743), p 7. But in neither *Farmers* nor *Lampman* was the commercial or profit-driven nature of the insured entity ultimately dispositive of whether MCL 500.3114(2) applied.[2] Rather, *Farmers* introduced the "primary purpose/incidental nature" test in order to assess whether a vehicle is "operated in the business of transporting passengers." *Farmers*, 256 Mich App at 701. Under this test, courts must first evaluate whether the transportation of passengers occurred in a manner incidental to the vehicle's primary purpose. *Id*. Second, courts must consider whether the transportation services

---

[2] In *Lampman*, this Court's statement that " '[i]n the business of' connotes for-profit" is tangential to its broader conclusion that "simply because the Legislature excepted a certain type of organization [in MCL 500.3114(2)(a)-(g)] from the general rule of § 3114(2) does not mean that a similar, unexcepted organization is necessarily considered 'in the business of transporting passengers.' " *Lampman*, unpub op at 7. In determining whether subsection 3114(2) applied, this Court examined the defendant's primary business and whether transportation was merely incidental to its overall business purpose. *Id*. at 7-8. Accordingly, *Lampman* supports our present holding that the language "in the business of" equates to "primary purpose" and not to profit motive.

were a primary or incidental component of the *overall* business. *Id*. at 701-702. Notably absent from this test is any requirement that the "business" endeavor be for-profit. Indeed, as the trial court reasoned, had the Legislature intended that subsection 3114(2) apply only in the commercial context, there would have been no need to incorporate the express exemptions in MCL 500.3114(2)(c) and (d) for transportation programs that are government sponsored or serving nonprofit organizations. Thus, when deciding whether MCL 500.3114(2) is applicable, the appropriate inquiry is not the for-profit or commercial nature of an endeavor but rather the primary purpose/incidental nature test.

With respect to the first part of this analysis, MMRMA does not contest that the vehicle in question was operated for the primary purpose of transporting passengers. Indeed, the vehicle was owned by MCCOA and was customized with a wheelchair lift in order to accommodate elderly passengers and transport them to medical appointments. MCCOA's website advertises that "Qualified Seniors are transported to and from medical appointments and other limited needs. Volunteer Drivers are trained to transport individual seniors. . . . Four vans are available for handicapped, medical and group social trips." The present case is thus unlike *Farmers*, in which a daycare provider incidentally used her own personal vehicle to transport children to and from the daycare center. *Id*. at 701-702. The Court determined that the vehicle was primarily used as a personal vehicle and therefore was not operated for the primary purpose of transporting passengers. *Id*.; see also *Thomas v Tomczyk*, 142 Mich App 237, 240 n 2; 369 NW2d 219 (1985) (holding that, although a college student incidentally used his personal vehicle to carpool with two other students in exchange for money, the vehicle was not operated for the primary purpose of transporting passengers). Here, in contrast, MCCOA used the vehicle *exclusively* to transport elderly residents and not for any other purpose. Accordingly, there can be no question in the present case that the primary purpose of the vehicle was to transport passengers.

Regarding the second part of the analysis, the parties dispute whether the transportation service is primary or incidental. MMRMA contends that Mecosta County's "business" is providing county governance and that the provision of transportation is merely incidental to ensuring the health, safety, and welfare of its residents. Additionally, MMRMA emphasizes that the transportation program is operated on a budget of approximately $100,000, according to MCCOA's 2016 Deposit Report, a miniscule portion of the County's overall revenues and expenditures of approximately $12 million, as reflected on the Mecosta County 2016 Balance Sheet.

MMRMA's argument erroneously places the focus on Mecosta County at large as opposed to MCCOA, the municipal department that operates the transportation service on behalf of the County. It is undisputed that MCCOA, and not Mecosta County, is listed on the title as the vehicle owner and was responsible for purchasing the vehicles. Thus, the relevant inquiry is whether the transportation service is a primary or incidental component of MCCOA's overall mission rather than Mecosta County's.

MCCOA's website states that the agency's overall purpose is "to improve the quality of life of the county's 60-plus population. The agency's goal is to support Seniors in their efforts to remain in their own homes, maintaining independence, health, dignity, and self-respect." In this regard, MCCOA provides a variety of services, including recreational programs, transportation services, homemaker and respite aides, meals on wheels, congregate meal sites, and medical

equipment loans. In order to provide its transportation service, MCCOA purchased three vehicles in 2012 for a combined total of $110,442. MMRMA represents that MCCOA operated its transportation program in 2016 on a budget of roughly $100,000; however, its total expenditures for 2016 amounted to $858,378. Therefore, transportation expenses accounted for approximately 11% of MCCOA's total expenditures. Further, Mecosta County executed a contract with Area Agency on Aging of Western Michigan (AAAWM), a nonprofit corporation, in 2016 to provide the various services discussed above in exchange for grant payments in the total amount of $272,191. Of this total amount, $20,315, or 7.5%, was allotted toward the transportation program, the third largest proportion of funds divided amongst seven types of services.

Despite the fact that transportation represented only a portion of MCCOA's budget in 2016, it was nonetheless a significant enough component to warrant the purchase of three customized vehicles in 2012. MCCOA's transportation expenses would no doubt have been significantly higher when the vehicles were purchased and therefore would have accounted for a larger proportion of the budget. Following the initial purchase of the vehicles, the transportation program's expenses were limited to vehicle maintenance, fuel, and drivers' wages. But the comparatively low budgetary expense is not necessarily indicative of the importance of and demand for the transportation service. Demand for the service appears to be considerable, as MCCOA purchased a fourth vehicle in 2016. Thus, we agree with the trial court's holding that "[a]lthough the transportation program constitutes a fraction of the overall budget of Mecosta County, it is a significant component of the [MCCOA] and its stated mission to serve the aging population of Mecosta County." Consequently, the transportation of passengers is a primary and not incidental component of MCCOA's mission, and MCL 500.3114(2) applies.

## B. EXEMPTIONS TO MCL 500.3114(2)

As described above, an insurer of a motor vehicle operated in the business of transporting passengers must cover personal protection insurance benefits for any passenger injured as a result of an accident involving that motor vehicle. MCL 500.3114(2). Seven exemptions to this provision are set forth at MCL 500.3114(2)(a) through (g). Relevant to the present litigation are MCL 500.3114(2)(c) and (d), which respectively exempt "[a] bus operating under a government sponsored transportation program," and "[a] bus operated by or providing service to a nonprofit organization." Plaintiff maintains that the trial court erred in determining that the exemption under MCL 500.3114(2)(c) applied under the present circumstances for two reasons: (1) MCCOA's transportation service is not a government sponsored transportation program, and (2) the vehicle at issue is not a bus. Although we disagree with plaintiff's first argument, we agree that the vehicle at issue is not a bus.

## 1. GOVERNMENT SPONSORED TRANSPORTATION PROGRAM

In support of its position that the vehicle was not operated under a government sponsored transportation program, plaintiff first contends that the exemption was intended to apply only to mass transit programs. In support of its position, plaintiff relies exclusively on the following legislative analysis underlying MCL 500.3114(2)(c) and (d):

> The bus operations which would be exempted under the bill are all under a severe financial burden. Common carriers, including inner-city bus companies, must pay enormous insurance premiums at a time when many of them are under a serious competitive strain. Government sponsored programs, such as the Southeastern Michigan Transportation Authority (SEMTA) and the Capital Area Transportation Authority (CATA) are already receiving public subsidies and are subject to the same large insurance premium costs. Non-profit organizations of all kinds are traditionally short of funds and would benefit greatly from being relieved of the cost of large insurance premiums. [*USAA Ins Co v Houston Ins Co*, 220 Mich App 386, 392; 599 NW2d 98 (1996), quoting House Legislative Analysis, HB 6448 (September 27, 1976).]

Because this analysis specifically references mass transit programs such as SEMTA and CATA, plaintiff maintains that the Legislature intended to limit the scope of the exemption to these types of programs.

The exemption set forth by MCL 500.3114(2)(c) applies to buses "operating under a government sponsored transportation program." This plain text is unambiguous and omits any reference to mass transportation. Because the statute is clear and unambiguous, it is improper to look outside its plain language. See *In re Certified Question from US Court of Appeals for Sixth Circuit*, 468 Mich 109, 116; 659 NW2d 597 (2003). As our Supreme Court has emphasized, "[W]e do not resort to legislative history to cloud a statutory text that is clear." *Id*. (quotation marks and citations omitted). Accordingly, we decline to consider the legislative analysis cited by plaintiff or to add a limitation not found within the unambiguous and plain language of the statute. See *Empire Iron Mining Partnership v Orhanen*, 211 Mich App 130, 135; 535 NW2d 229 (1995) ("We cannot and should not add requirements to the statute that are not found there."). Moreover, our Supreme Court has cautioned that legislative analyses, such as the one plaintiff relies upon, are of "considerably diminished quality as legislative history." *In re Certified Question*, 468 Mich at 115 n 5. Indeed, "[t]hese staff analyses are entitled to little judicial consideration in resolving ambiguous statutory provisions," as they are not produced within the boundaries of the legislative process and are thus not reliable indicia of the Legislature's intentions. *Id*.

Next, plaintiff contends that MCCOA's transportation service is not a government sponsored transportation program in light of this Court's decision in *Houston*, 220 Mich App 386, the only case law concerning MCL 500.3114(2)(c). In *Houston*, Commuter Transportation Company, a private corporation, entered into an agreement with Wayne County to provide shuttle service at Detroit Metropolitan Wayne County Airport. *Id*. at 387. Under the agreement, Commuter was paid a monthly management fee and further agreed to indemnify and hold Wayne County harmless from liability arising from operation of the shuttle. *Id*. at 390. After a passenger was injured while riding a shuttle bus operated by Commuter, the passenger's insurer and Commuter's insurer disputed priority for payment of benefits. *Id*. at 387-388. Commuter's insurer argued that it was exempt from priority under MCL 500.3114(2)(c) because Commuter operated a government sponsored transportation program. *Id*. at 389. This Court rejected this argument, reasoning that

the agreement specifically states that Commuter was not thereby made an agent of the county. Rather, the county merely hired Commuter to perform a service. The county did not undertake responsibility for the operation of the shuttle service. In fact, the contract requires that Commuter indemnify the county for any potential liability and that Commuter retain its own liability insurance. [*Id.*]

Thus, the Court concluded that "payment for a service by a government agency is not enough to render the service a government-sponsored activity." *Id*. at 390-391.

In the present case, MCCOA, a department of Mecosta County, was entirely responsible for the operation of the transportation program. MCCOA staff and drivers were employed by Mecosta County. Additionally, MCCOA purchased and owned the medical transportation vehicles, as well as paid for the vehicles' fuel and maintenance with funds allocated to it by Mecosta County. According to MCCOA's 2016 Statement of Revenues and Revenue and Expenditure Report, its medical transportation program is funded through a combination of local tax funds, state and federal grants, and federal grants passed through AAAWM, a nonprofit corporation. Local taxes accounted for $630,884, or 71%, of MCCOA's $876,416 in total revenues for 2016. Funding is first provided to or collected by Mecosta County, which then allocates those funds to MCCOA, as reflected in Mecosta County's 2016 Balance Sheets, Statement of Revenues, and Schedule of Expenditures for the Commission on Aging. Consistent with this description, the affidavit of Paul E. Bullock, Mecosta County administrator, states that MCCOA "is funded by Mecosta County pursuant to a special millage with some federal funding."[3]

With respect to funds received from AAAWM, Mecosta County and AAAWM executed an agreement in October 2016, under which the County would provide various services – including homemaker and respite aides, transportation, and home delivered meals – to elderly residents. In exchange for these services, AAAWM dispensed federal grant funding under Title III of the Older Americans Act of 1965 to Mecosta County. For the period extending from October 2016 through September 2017, AAAWM awarded Mecosta County a total of $272,191 in funding, $20,315 of which was devoted exclusively to transportations services. Additionally, Mecosta County agreed to indemnify and hold AAAWM harmless from all liabilities arising from operations carried out under the contract and to maintain insurance protecting AAAWM and itself from all such liabilities. Under the agreement, Mecosta County was not to be deemed an agent or employee of AAAWM.

In light of the foregoing discussion, it is clear that the medical transportation program is sponsored by Mecosta County, through MCCOA. As the term "sponsored" is not defined within the statute, the Court may consult the dictionary for its " 'ordinary and generally accepted meaning[].' " *In re Certified Question*, 468 Mich at 113, quoting *People v Morey*, 461 Mich

---

[3] Plaintiff claims that Mr. Bullock's affidavit later contradicts itself by stating that MCCOA "is funded by Mecosta County." These two statements are not inconsistent; as described above, Mecosta County is responsible for allocating funds to MCCOA from revenues generated from local taxes, state or federal grants, and AAAWM.

325, 330; 603 NW2d 250 (1999). The dictionary defines "sponsor" as "a person or an organization that pays for or plans and carries out a project or activity." *Merriam-Webster's Collegiate Dictionary* (11th ed). There can be no question that MCCOA plans and carries out the transportation program, as it maintains, fuels, and owns the vehicles, while Mecosta County employs the drivers. Plaintiff contends that "no documents indicate that the transportation services are funded by anything other than the grant money awarded to the county from AAAWM, the Department of Transportation, through MDOT, and the 'donations' for the van." To the contrary, the documentary evidence demonstrates that Mecosta County sponsors the transportation program by allocating to MCCOA funds generated from the County's local taxes, state and federal grants, and federal funding passed through AAAWM. Indeed, local taxes account for 71% of MCCOA's funding. As argued by MMRMA, acceptance of state and federal government funds does not render the transportation program any less "government sponsored," as nothing in the statute requires that a program be fully funded by a single government without reliance on any other revenue source. In fact, acceptance of these funds simply results in sponsorship by multiple governments.

As determined by the trial court, the present case is unlike *Houston* insofar as Mecosta County, through MCCOA, undertook responsibility for the operation of the transportation service and funded the program itself rather than contracting with a private company for the cost of the service. Additionally, pursuant to its contract with AAAWM, Mecosta County assumed liability and agreed to indemnify AAAWM for any harm or injury arising from operation of the transportation program. In *Houston*, by contrast, Wayne County expressly disclaimed all liability. See *Houston*, 220 Mich App at 390. Thus, plaintiff's position that Mecosta County was merely compensated by AAAWM for services rendered has no basis in the factual record.[4]

Consequently, we conclude that the trial court correctly held that MCCOA's transportation program is operated "under a government sponsored transportation program," in accordance with MCL 500.3114(2)(c).

## 2. WHETHER THE VEHICLE IS A "BUS"

We next turn to plaintiff's contention that neither exemption under MCL 500.3114(2)(c) or (d) is applicable here, as the vehicle at issue is not a "bus." The statutory language clearly and unambiguously specifies that the exemptions apply to buses. See MCL 500.3114(2)(c) and (d). As the no-fault act does not define the term "bus," it is appropriate to construe it according to its plain and ordinary dictionary definition. See *In re Certified Question*, 468 Mich at 113. The dictionary defines "bus" as "a large motor vehicle designed to carry passengers, usu. along a fixed route according to a schedule," *Merriam-Webster's Collegiate Dictionary* (11th ed), or

---

[4] Even assuming that AAAWM simply paid Mecosta County for services rendered, plaintiff has failed to rebut MMRMA's argument that such an arrangement would constitute "providing service to a nonprofit organization" under MCL 500.3114(2)(d). As conceded by plaintiff, AAAWM is a domestic nonprofit corporation. Thus, MCCOA was providing transportation service to a nonprofit organization.

more simply as a "long motor vehicle for carrying passengers," *Webster's New College Dictionary* (3d ed).

Plaintiff urges this Court to instead adopt the definition of "bus" set forth in the Motor Vehicle Code, MCL 257.4b: "a motor vehicle designed for carrying 16 or more passengers, including the driver," excepting a school bus. In substance, this definition differs from the dictionary definition only insofar as it incorporates a minimum capacity requirement of 16 passengers. This Court has previously consulted the Motor Vehicle Code for guidance in construing the meaning of a term undefined by the no-fault act or by an insurance policy. See, e.g., *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 323; 503 NW2d 758 (1993); *McDaniel v Allstate Ins Co*, 145 Mich App 603, 608; 378 NW2d 488 (1985). However, incorporating a minimum seating capacity into the definition adds a technicality not in keeping with the plain and ordinary meaning of the term "bus." See *Maxwell v Citizens Ins Co of America*, 245 Mich App 477, 482; 628 NW2d 95 (2001) (declining to adopt the technical definition of "rehabilitate" in favor of the ordinary dictionary definition). Further, as the ordinary meaning of the term "bus" is clear and unambiguous, resort to the Motor Vehicle Code is unnecessary.

Plaintiff also contends that a common understanding of the word "bus" requires that the vehicle operate on a fixed route or schedule. Although some dictionaries incorporate this element into the definition, it is qualified by the word "usually," thereby rendering it inessential. See, e.g., *Merriam-Webster's Collegiate Dictionary* (11th ed) ("a large motor vehicle designed to carry passengers, *usu.* along a fixed route according to a schedule" (emphasis added)). Moreover, to interpret the term as encompassing only those vehicles that operate according to a fixed route or schedule would exclude vehicles that are undisputedly buses but operate on a charter basis. Accordingly, the plain and ordinary sense of the term "bus" does not necessarily require operation on a fixed route or schedule.

This Court must thus determine whether the vehicle at issue in the present case is a "bus" in the ordinary sense of the word. The vehicle is a Ford E-350 "van" or "wagon," customized to include a raised roof, a wheelchair lift, and wheelchair restraints. The only evidence the parties provide of the vehicle's appearance is a photograph of the vehicle's rear, which resembles a cargo van with a raised roof. The trial court erroneously noted that the vehicle could hold 15 passengers and concluded, with no further analysis, that "[t]aken plainly, the vehicle involved in this case would fall within the broader dictionary definition of bus[,] ['a long motor vehicle for carrying passengers']." However, MMRMA conceded during oral argument that it could seat only 9 to 10 passengers. MMRMA further explained that the Ford E-350 "van" or "wagon" vehicle base could be fitted with a more traditional "bus" body that could seat 14 passengers in addition to the driver.

Under these facts, we conclude that the vehicle at issue is a "van" and not a "bus" in the plain and ordinary sense of those terms. The dictionary defines "van" as "a multipurpose enclosed motor vehicle having a boxlike shape, rear or side doors, and side panels often with windows." *Merriam-Webster's Collegiate Dictionary* (11th Ed). Given the variety of customizations offered for E-Series vehicles, they are certainly multipurpose, while the vehicle at issue here has a boxlike shape, rear and side doors, and side panels with windows. Further, MCCOA's website refers to its fleet of medical transportation vehicles as "vans." The vehicle

title and application for registration both identify "van" as the body style. The 2013 Ford Econoline Wagon Brochure refers to the body style selected for the vehicle at issue here as a "van" or "wagon." Assuming the vehicle can carry 9 to 10 passengers, large SUVs and cargo vans are capable of similar capacities. And although the vehicle base may be customized to carry up to 15 passengers, that is not the factual circumstance confronted here.

In contrast, the vehicle does not meet the common understanding of the term "bus," as it is not a "large motor vehicle" or "long motor vehicle" as compared to the average cargo van. Indeed, in its brief on appeal, MMRMA offers the following description of a traditional bus: "[a] vehicle which has a defined, rectangular cabin; a driver cab separated from the passenger compartment; a side entrance with articulated doors; and stairs to enter from the door to the cabin area . . . ." Additionally, buses typically have a center aisle, dual rear wheels, and are longer and have a greater amount of headroom than vans. The evidence before the Court does not demonstrate that the vehicle at issue possesses *any* of these characteristics. MMRMA has failed to sufficiently support its position that the vehicle is a bus by submitting evidence regarding the vehicle's capacity and appearance, such as photographs of the vehicle's side or interior. Ultimately, the Legislature deliberately and unambiguously limited application of the exemptions set forth in MCL 500.3114(2)(c) and (d) to "buses" in particular as opposed to "motor vehicles" more generally. In order to give effect to this language, we conclude that the vehicle at issue does not meet the common understanding of the term "bus." Accordingly, as MMRMA has not demonstrated that the vehicle is a bus, the exemptions set forth under MCL 500.3114(c) and (d) do not apply.

MMRMA maintains that, in order to give effect to the legislative intent underlying the exemptions, this Court must find that the vehicle at issue is encompassed within the term "bus." This Court has previously recognized that the Legislature's intent underlying the exemptions set forth by MCL 500.3114(2)(c) and (d) was "to spare government-sponsored transportation programs and nonprofit organizations the cost of high insurance premiums." *Houston*, 220 Mich App at 393. In arriving at this determination, the Court considered House Legislative Analysis, HB 6448 (September 27, 1976), the legislative analysis quoted above. MMRMA contends that to hold that the vehicle at issue is not encompassed within the term "bus" would be to exclude from the scope of MCL 500.3114(2)(c) and (d) small communities and nonprofit organizations that have neither the funds nor the populations necessary to purchase larger vehicles. Finally, MMRMA notes that the Motor Vehicle Code reflects a similar legislative intent to spare nonprofit and governmental entities additional costs by broadening its definition of "bus" as relates to the imposition of registration taxes on nonprofit organizations. See MCL 257.801(1)(g) ("For a bus including a station wagon, carryall, or similarly constructed vehicle . . . ."); see also MCL 257.801(1)(f) (extending a tax advantage to state-owned and municipal vehicles).

MMRMA's reliance on the legislative intent underlying the relevant exemptions, as demonstrated through the legislative analysis, is unavailing. It is a central tenet of statutory construction that courts are bound to apply unambiguous statutory language as written, without looking outside the plain words of the text. *In re Certified Question*, 468 Mich at 116. Furthermore, courts are not permitted to "resort to legislative history to cloud a statutory text that is clear." *Id*. (quotation marks and citations omitted). As discussed above, the Legislature's use of the term "bus" in the statute is clear and unambiguous. MMRMA has not argued otherwise.

Accordingly, it would be improper for this Court to consult the legislative history in applying this statute.

It bears repeating that the legislative analysis relied upon by MMRMA is entitled to little weight, as our Supreme Court has emphasized that such sources are not reliable depictions of the Legislature's intentions. *Id*. at 115 n 5. However, even if the Court were to consider the legislative analysis, the content does not support MMRMA's position. The analysis indicates that the exemptions apply to "common carriers" and large "inner-city bus companies," referencing public transit operators SEMTA and CATA as examples of government sponsored programs. The medical transportation program presently at issue is neither a common carrier nor an inner city bus service such as SEMTA or CATA. As such, it is not the type of service the legislative analysis indicates the statute was intended to exempt, and MMRMA's reliance on the legislative history is unavailing.

Accordingly, as we conclude that the vehicle at issue is not a "bus" in the plain and ordinary sense of the term, the exemptions set forth in MCL 500.3114(2)(c) and (d) do not apply in the present matter.

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola

-12-