FARMERS INSURANCE EXCHANGE v AAA OF MICHIGAN

Docket No. 232188. Submitted March 3, 2003, at Detroit. Decided June 3, 2003, at 9:05 A.M.

Farmers Insurance Exchange brought an action in the 67th District Court against AAA of Michigan, seeking a declaration that the defendant was first in priority under the no-fault act, MCL 500.3101 et seq., to pay no-fault benefits related to a 1998 automobile accident in which the plaintiff's insured's daughters were injured while riding to school in an automobile driven by their day-care provider and insured by the defendant. The plaintiff argued that the defendant was first in priority to pay no-fault benefits because, at the time the accident occurred, the vehicle used by the day-care provider to transport the children in the operation of a for profit day-care center was a motor vehicle operated in the business of transporting passengers. MCL 500.3114(2). Conversely, the defendant argued that the plaintiff was first in priority under the no-fault act. The district court, Christopher Odette, J., granted summary disposition in favor of the plaintiff, and the defendant appealed to the Genesee Circuit Court, Richard B. Yuille, J., which court affirmed the order and judgment of the district court. The defendant appealed by leave granted.

The Court of Appeals held:

MCL 500.3114(2) is an exception to the general rule that an injured person is required to seek compensation from his own no-fault insurer, regardless of whether that person's vehicle is involved in the accident. MCL 500.3114(1). Subsection 3114(2) provides an exception where the person suffering an injury was an operator or passenger of a motor vehicle "operated in the business of transporting passengers." Consistent with the Legislature's intent and with the case law interpreting the statute, a primary purpose/incidental nature test is to be applied to determine whether at the time of an accident a motor vehicle was being operated in the business of transporting passengers pursuant to subsection 3114(2). Applying the test under the facts of this case reveals that the day-care provider's driving of the children to school did not fall within the scope of subsection 3114(2), because the driving of the children to school was incidental to the vehicle's primary use as a

personal vehicle, and was also incidental to the provider's day-care business.

Reversed and remanded for entry of a judgment in favor of the defendant.

INSURANCE — NO-FAULT ACT — PERSONAL PROTECTION BENEFITS — PRIORITY.

A person injured in an automobile accident is generally required to seek compensation from his own no-fault insurer even where that person's insured vehicle is not involved in the accident; an exception to that rule applies where the person injured was the operator or a passenger of a motor vehicle operated in the business of transporting passengers, in which case the insurer of the commercial vehicle involved is first in priority for liability for personal protection insurance benefits to the injured person; a primary purpose/incidental nature test must be applied to determine whether at the time of an accident a motor vehicle was being operated in the business of transporting passengers for purposes of applying the exception (MCL 500.3114[1] and [2]).

*Richard R. Bachelder* for the plaintiff.

*Gross, Nemeth & Silverman, P.L.C.* (by *Mary T. Nemeth*), and *Schoolmaster, Hom, Killeen, Siefer & Arene* (by *Kevin S. Carden*) for the defendant.

Before: HOEKSTRA, P.J., and SMOLENSKI and HOOD, JJ.

PER CURIAM. This case involves a priority dispute under Michigan's no-fault act, MCL 500.3101 *et seq.*, between two insurance companies concerning payment of no-fault benefits related to injuries that two children sustained while passengers in an automobile driven by their day-care provider. The district court granted summary disposition in favor of plaintiff Farmers Insurance Exchange and later entered a judgment for plaintiff in the amount of $18,811.96. Defendant AAA of Michigan filed a claim of appeal in the circuit court from the district court judgment, but the circuit court denied defendant's appeal and affirmed the district court's decision. Defendant now

appeals by leave granted. The only issue on appeal is whether plaintiff or defendant is first in priority for payment of automobile insurance benefits in light of subsection 3114(2) of the no-fault act, MCL 500.3114(2). We hold that the applicability of subsection 3114(2) depends on a primary purpose/incidental nature inquiry with respect to whether a motor vehicle is operated in the business of transporting passengers. Because we conclude that subsection 3114(2) does not apply under the circumstances in the present case, we reverse the lower courts' orders and remand for entry of judgment in favor of defendant.

## I. FACTS AND PROCEDURAL BACKGROUND

In May of 1999, plaintiff filed a complaint in district court, seeking a declaratory judgment that defendant was first in priority for liability for no-fault benefits related to a May 14, 1998, automobile accident. The two minor daughters of plaintiff's insured[1] suffered injuries while passengers in a vehicle driven by their day-care provider and insured by defendant. Plaintiff paid the children's claim for personal injury protection (PIP) benefits, but sought reimbursement from defendant on the basis that pursuant to subsection 3114(2) of the no-fault act, MCL 500.3114(2), defendant had first priority to pay these benefits. According to plaintiff, at the time the accident occurred, the vehicle the day-care provider used to transport the children in the operation of a for-profit day-care center was "a motor vehicle operated in the business

---

[1] The girls' father had a personal automobile insurance policy through plaintiff that covered the girls as members of the household. See MCL 500.3114(1).

of transporting passengers to and from day care/school," and thus, pursuant to subsection 3114(2), defendant was responsible for providing PIP benefits. Plaintiff also claimed that defendant had denied plaintiff's requests for reimbursement.

In its answer to the complaint, defendant left plaintiff to its proofs concerning priority under subsection 3114(2) and denied that it had refused plaintiff's request for reimbursement. Subsequently, the parties filed cross-motions for summary disposition. Each party argued that the other party occupied the no-fault insurance position of first priority under MCL 500.3114 and provided reasonable arguments concerning the applicability of the statute in this case. However, having heard argument on the motions, the district court granted plaintiff's motion for summary disposition and denied defendant's motion for summary disposition; the order stated that defendant was in first priority to pay no-fault PIP benefits. Thereafter, pursuant to the parties' stipulation, the court entered a judgment for plaintiff in the amount of $18,811.96. Defendant filed in the circuit court, a claim of appeal regarding the district court's judgment, but after briefing and oral argument, the circuit court denied defendant relief from the district court's judgment. Thereafter, defendant sought leave to appeal in this Court, which this Court granted.

## II. STANDARD OF REVIEW

Resolution of the issue before us requires interpretation and application of subsection 3114(2) of the no-fault act, which are questions of law that this Court reviews de novo. *Proudfoot v State Farm Mut Ins Co*, 254 Mich App 702, 708; 658 NW2d 838 (2003);

*Bloomfield Charter Twp v Oakland Co Clerk*, 253 Mich App 1, 9; 654 NW2d 610 (2002). In a recent case involving interpretation of the no-fault act, *Proudfoot, supra,* this Court reiterated pertinent rules of statutory construction:

> The primary goal when construing a statute is to ascertain and give effect to the intent of the Legislature. When determining the Legislature's intent, this Court must first look to the statute's specific language. Judicial construction is unnecessary if the meaning of the language is clear. However, judicial construction is appropriate when reasonable minds can differ regarding the statute's meaning. Terms contained in the no-fault act are read " 'in the light of its legislative history and in the context of the no-fault act as a whole.' " Further, courts should not abandon common sense when construing a statute. Given the remedial nature of the no-fault act, courts must liberally construe its provisions in favor of the persons who are its intended beneficiaries. [*Proudfoot, supra* at 708-709 (citations omitted).]

### III. ANALYSIS

The sole issue on appeal is which insurer, plaintiff or defendant, is first in priority for payment of PIP benefits for two children who sustained injuries in a motor-vehicle accident.

We begin our analysis by noting that generally an injured person is required to seek compensation from his own no-fault insurer, regardless of whether that person's insured vehicle is involved in the accident. MCL 500.3114(1). In *Thomas v Tomczyk*, 142 Mich App 237, 241; 369 NW2d 219 (1985), this Court noted:

> The primary goal of the Legislature in enacting the Michigan no-fault act . . . was to ensure prompt and adequate compensation to parties injured in automobile accidents by

requiring them to first look to their own insurers. Thus, an injured person is generally required to seek compensation from his own no-fault insurer even where that person's insured vehicle is not involved in the accident. [Citations omitted.]

However, the Legislature provided exceptions to this general rule, including the exception found in subsection 3114(2):

*A person suffering accidental bodily injury while an operator or a passenger of a motor vehicle operated in the business of transporting passengers shall receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle.* This subsection does not apply to a passenger in the following, unless that passenger is not entitled to personal protection insurance benefits under any other policy:

(a) A school bus, as defined by the department of education, providing transportation not prohibited by law.

(b) A bus operated by a common carrier of passengers certified by the department of transportation.

(c) A bus operating under a government sponsored transportation program.

(d) A bus operated by or providing service to a nonprofit organization.

(e) A taxicab insured as prescribed in section 3101 or 3102.

(f) A bus operated by a canoe or other watercraft, bicycle, or horse livery used only to transport passengers to or from a destination point. [MCL 500.3114(2) (emphasis supplied).]

The parties agree that none of the exceptions within subsections 3114(2)(a)-(f) apply in this case.

With regard to the instant case, the significant language of subsection 3114(2) is "a motor vehicle operated in the business of transporting passengers . . . ."

The no-fault act does not define this statutory phrase or the operative terms within it that are implicated in this case.[2] Defendant asserts that "the business of transporting passengers" must constitute the sole or primary purpose of the motor vehicle, while plaintiff suggests that even utilization of a vehicle in the business of transporting passengers incidental to other, primary uses of the vehicle falls within the scope of subsection 3114(2). Because the statutory phrase does not have a clear and unambiguous meaning, this Court must construe it under the rules of statutory interpretation. *Proudfoot, supra.*

While sparse Michigan case law exists interpreting or otherwise discussing subsection 3114(2), this Court has made relevant observations concerning the Legislature's motives in enacting subsection 3114(2) and its exceptions. In *Michigan Mut Ins Co v Farm Bureau Ins Group*, 183 Mich App 626, 633-634; 455 NW2d 352 (1990), this Court noted:

> As previously indicated, the Legislature generally "intended that an injured person's personal insurer stand primarily liable for . . . benefits whether or not its policy covers the motor vehicle involved and even if the involved vehicle is covered by a policy issued by another no-fault insurer." *Lee v DAIIE*, 412 Mich 505, 515; 315 NW2d 413 (1982). The "injured person's personal insurer" is, of course, the insurance company providing no-fault insurance in his household which was purchased by an "owner or registrant of a motor vehicle." MCL 500.3101(1) and 500.3114(1) . . . . While a business can be an owner or registrant of a motor vehicle, and thus required to purchase no-fault insurance, a business obviously cannot be a "household," or have a "spouse" or "relative," in the primary and generally under-

---

[2] We note that "motor vehicle" is defined in the no-fault act, MCL 500.3101(2)(e).

stood meaning of those words. Accordingly, insurers of business vehicles usually would not be first in order of priority under the general priority scheme. *The Legislature recognized this and created what amounts to a business household in § 3114(2) and (3), so that responsibility for providing benefits would be spread equitably among all insurers of motor vehicles.*

The household in § 3114(2) consists of the operator of the motor vehicle, and passengers under certain circumstances. It is apparent that the Legislature used the terms "operator" and "passenger" in § 3114(2) so that, as in § 3114(3), it could define a "household" of reasonable size in convenient terms. See MCL 500.3114(2)(a)-(f) . . . . [J]ust as the Legislature enacted § 3114(2) and (3) to spread liability equitably among all insurers, it enacted exceptions to § 3114(2), requiring use of the word "passenger," to prevent the shift of primary liability from being inequitable in certain obvious circumstances. [Emphasis supplied.]

In an earlier opinion, *State Farm Mut Automobile Ins Co v Sentry Ins*, 91 Mich App 109, 114; 283 NW2d 661 (1979), this Court explained:[3]

*The exceptions in § 3114(2) and (3) relate to "commercial" situations.* It was apparently the intent of the Legislature to place the burden of providing no-fault benefits on the insurers of these motor vehicles, rather than on the insurers of the injured individual. This scheme allows for predictability; coverage in the "commercial" setting will not depend on whether the injured individual is covered under another policy. *A company issuing insurance covering a motor vehicle to be used in a (2) or (3) situation will know in advance the scope of the risk it is insuring.* [Emphasis supplied.]

---

[3] We acknowledge that this explanation is dicta because the case did not involve this Court's ruling with respect to subsection 3114(2), but we find the analysis persuasive.

As the parties observe, *Thomas, supra,* is the only published opinion of this Court interpreting the meaning of "a motor vehicle operated in the business of transporting passengers" within subsection 3114(2).[4] *Thomas* involved a dispute concerning which no-fault insurer had priority of coverage. *Id.* at 239, 241. In *Thomas,* two Michigan Technological University students sustained injuries after they were involved in an automobile accident while they were passengers in an automobile driven by a third student and headed home to the Flint area for the holidays. *Id.* at 239. The two students had responded to a ride board notice posted by the third student, with whom they had no previous acquaintance, and paid him twenty-five dollars for a round trip. *Id.* The two students filed suit seeking to recover no-fault benefits from the insurer of the driver's vehicle on the basis that "at the time of the accident, plaintiffs were passengers in a 'motor vehicle operated in the business of transporting passengers,' " according to subsection 3114(2). *Id.* at 240. This Court affirmed the trial court's grant of summary disposition to the driver's insurer. *Id.* at 240-242. In a footnote, this Court quoted the circuit court's analysis:

---

[4] We note that in *USAA Ins Co v Houston Gen Ins Co,* 220 Mich App 386; 559 NW2d 98 (1996), cited by plaintiff, this Court considered whether a shuttle bus service that had contracted to provide transportation services at Detroit Metropolitan Wayne County Airport fell within two of the exemptions to subsection 3114(2). *USAA Ins Co, supra* at 390-393. The Court did not explain the significance of the phrase "motor vehicle operated in the business of transporting passengers" because the shuttle bus company's insurer apparently did not dispute that the bus company operated vehicles in the business of transporting passengers. *Id.* at 388-389.

The [c]ourt . . . will find that this is not any business. And I'll make a specific statement that, *it wasn't the primary function of the driver to carry passengers for hirer* [sic], he's a student, as far as I can tell. And *it is not the primary purpose of the vehicle to carry passengers for hirer* [sic], it just happened that *incidental* to coming home, it was convenient to take on passengers, and I don't really blame him for trying to make a little extra money to cover the cost of gas, that's a long ride up the Upper Peninsula. And so the entry of a judgment in favor of MEEMIC [the driver's insurer] is granted in both cases. [*Thomas, supra* at 240 n 2 (emphasis added).]

After referring to the general rule regarding no-fault recovery and the exception provided within subsection 3114(2), this Court provided the following one paragraph of analysis:

We are not persuaded that the Legislature intended by its enactment of § 14(2) [subsection 3114(2)] of the no-fault act to abandon the general rule of coverage where college students pay other college students for the privilege of carpooling home for school holidays. We agree with the trial court that under the particular facts of these cases, plaintiffs were not passengers of "a motor vehicle operated in the business of transporting passengers." We thus affirm the judgment of the trial court. [*Thomas, supra* at 241-242.]

The instant case is factually distinguishable from *Thomas* to the extent that, unlike the isolated incident of carpooling during which the accident occurred in *Thomas*, the accident in the instant case took place as the day-care provider drove the children to school, which she routinely did three to five times each week. However, the *Thomas* Court appeared to sanction, without explicitly adopting or restating itself, the circuit court's analysis, which concluded that subsection 3114(2) did not apply because

the driver's transportation of passengers for hire did not constitute his *primary* function or purpose in operating his vehicle, but that "incidental[ly] to coming home, it was convenient to take on passengers."[5] *Thomas, supra* at 240 n 2, 241-242.

We agree with this analysis and believe that it accurately encompasses the intent of the Legislature in enacting subsection 3114(2). Thus, we hold that a primary purpose/incidental nature test is to be applied to determine whether at the time of an accident a motor vehicle was operated in the business of transporting passengers pursuant to subsection 3114(2).

Applying that test to the instant case, we conclude that the day-care provider's driving of the children to school would not fall within the scope of subsection 3114(2) because the record indicates, and the parties agree, that (1) her driving of the children to school in her vehicle occurred incidentally to the vehicle's primary use as a personal vehicle, and (2) her transportation of the children to and from school constituted

---

[5] In a more recent case, *Lampman v Workman,* unpublished opinion per curiam of the Court of Appeals, issued March 22, 2002 (Docket No. 225743), this Court considered the priority of the no-fault insurer of National Fleet Liquidators of Michigan, Inc. (NFL), which bought motor vehicles at auction for later resale to retailers. Because NFL "did not have a showroom location, NFL used 'drivers' to move the vehicles to the sale location, and a van would then transport the drivers back home. Several of these drivers, who were injured or killed when the van in which they were riding was involved in an accident, brought suit." This Court reversed the trial court's determination that the injured drivers were passengers in a vehicle operated in the business of transporting passengers under subsection 3114(2). This Court examined the term "business" within subsection 3114(2) and found that it signified a for-profit endeavor. This Court reasoned that "NFL's *primary* business (i.e., that from which it derived profit) was the buying and selling of cars. NFL's transportation of the drivers was *merely incidental* to its overall business." *Lampman, supra* (emphasis supplied).

an incidental or small part of her day-care business.[6] Furthermore, a conclusion that the day-care provider's incidental driving of the children to school did not constitute the operation of a vehicle in the business of transporting passengers under subsection 3114(2) is consistent with this Court's observations that the Legislature intended subsection 3114(2) to apply in "commercial" situations. *State Farm, supra* at 114.

### IV. CONCLUSION

In sum, we hold that the applicability of subsection 3114(2) of the no-fault act depends on a primary purpose/incidental nature inquiry with respect to whether a motor vehicle is operated in the business of transporting passengers. Under the facts of the present case, subsection 3114(2) does not apply, and thus plaintiff is first in priority to pay the no-fault benefits in question. Accordingly, we reverse and remand to the district court for entry of judgment in favor of defendant.

Reversed and remanded for further action consistent with this opinion. We do not retain jurisdiction.

---

[6] Contrary to plaintiff's suggestion, we do not believe that the day-care provider's compliance with vehicle-related state requirements applicable to day-care operators changes the fact that her transportation of children comprised a small part of her day-care business. Furthermore, the mere fact that the day-care provider charged a fee for her transportation of the children does not itself mean that she operated a vehicle in the business of transporting passengers. *Thomas, supra* at 240-242.