# STATE OF MICHIGAN

# COURT OF APPEALS

FRANKENMUTH INSURANCE COMPANY,

        Plaintiff-Appellee,

v

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

        Defendant-Appellant.

UNPUBLISHED
March 19, 2015

No. 319855
Kent Circuit Court
LC No. 12-006048-NZ

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Defendant Progressive Michigan Insurance Company (Progressive) appeals as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of plaintiff Frankenmuth Insurance Company (Frankenmuth). Jeanine Serba, who was insured under a policy issued by Frankenmuth, was a passenger on a motorcycle when it took a spill on a highway entrance ramp, landing Serba in the lane of traffic on the pavement of the ramp, where she lay for a few minutes until she was struck by a van driven by Miguel Angel Correa, who was insured by Progressive. Serba died as a result of the accident. This action regards an insurer-priority dispute between Frankenmuth and Progressive under MCL 500.3114 relative to the payment of personal protection insurance (PIP) benefits pursuant to the no-fault act, MCL 500.3101 *et seq.* The trial court ruled that Serba's bodily injury arose from a motor vehicle accident and was connected to Serba being a passenger on a motorcycle, making Progressive the higher-priority insurer for purposes of PIP benefits under MCL 500.3114(5). We affirm.

Daniel Martin averred in his affidavit that at 3:30 a.m. on August 6, 2011, he was operating a motorcycle and Serba was his passenger. According to Martin, they were traveling west on the entrance ramp to US-131 from I-196 when a red car supposedly drifted into his lane. Martin claimed that, in order to avoid a collision, he swerved, struck the curb, and lost control of his motorcycle. Both Martin and Serba were thrown from the motorcycle. Martin indicated that he observed Serba lying in the road and badly injured. As Martin went to get his motorcycle out of the road, Serba was struck by the van driven by Correa.

In a deposition, Jason Runions testified that he was driving north on US-131 around the time of the incident and that he saw Martin trying to get his motorcycle off the road. Runions stopped to help Martin, and he then observed Serba lying in the road. As he walked towards her,

-1-

Runions saw the van run over Serba. According to Runions, approximately 3 ½ to 4 minutes had elapsed from the time Runions first saw the motorcycle in the road to when he saw the van hit Serba. Runions opined that it was unlikely that another car had caused Martin to lose control of his motorcycle, given that Martin was traveling on a one-lane entrance ramp. A police report indicated that Martin's blood alcohol level was .18 at the time of the accident.[1] Correa was the driver and the owner and registrant of the van and insured by Progressive, while Serba, who died as a result of her injuries, was personally insured by Frankenmuth.

Subsequently, Serba's estate notified Frankenmuth that the estate intended to file a claim with Frankenmuth for insurance benefits. Frankenmuth, acknowledging that it insured Serba under a no-fault policy, made seven payments of PIP benefits to the estate, totaling $33,168. Later, Serba's sister filed a complaint in the trial court, alleging that Frankenmuth was obligated to pay her survivor loss benefits, MCL 500.3108, and that Frankenmuth had refused to pay such benefits. Serba's sister amended her complaint a couple of times, adding the sister's daughters as plaintiffs, and eventually naming both Progressive and Frankenmuth as the defendants. With respect to Frankenmuth's action against Progressive, Frankenmuth indicated that it had paid Serba's estate $33,168 and that, because Progressive insured the owner and operator of the van that struck Serba, Progressive was responsible for paying Serba's benefits. Frankenmuth claimed that it was entitled to recoup from Progressive the PIP payments made to Serba's estate. The two trial court cases were consolidated below.

In regard to Frankenmuth's claims against Progressive, both parties filed competing motions for summary disposition pursuant to MCR 2.116(C)(10), arguing that the other was the higher-priority insurer under MCL 500.3114 for purposes of paying PIP benefits. The trial court granted summary disposition in favor of Frankenmuth, ruling as a matter of law that Progressive was the higher-priority insurer under MCL 500.3114. Progressive appeals as of right.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). We likewise review de novo questions of law, including the proper construction of a statute. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).[2] In *Whitman v City of Burton*, 493 Mich 303,

---

[1] Martin eventually pled guilty to operating a vehicle while intoxicated causing death, MCL 257.625(4).

[2] With respect to a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), observed:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect

311-312; 831 NW2d 223 (2013), the Michigan Supreme Court recited the principles governing statutory construction:

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [Citations omitted.]

This case concerns the priority of insurers under the no-fault act, and MCL 500.3114 provides in pertinent part as follows:

> (1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident.
>
> . . .
>
> (5) A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

---

to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

In general, under subsection (1) above, "an injured person is required to seek compensation from his own no-fault insurer, regardless of whether that person's insured vehicle is involved in the accident." *Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 695; 671 NW2d 89 (2003). However, the Legislature has provided exceptions to this general rule, such as the one in subsection (5) of MCL 500.3114. *Farmers Ins Exch v Farm Bureau Ins Co of Mich*, 272 Mich App 106, 111; 724 NW2d 485 (2006). "MCL 500.3114(5). . . establishes the priority in which a motorcycle rider accidentally injured by a motor vehicle must claim no-fault benefits." *Id.*

Under MCL 500.3114(5), Progressive does not dispute that Serba suffered accidental bodily injury arising from a motor vehicle accident which showed evidence of the involvement of a motor vehicle, i.e., the van. Rather, the issue on appeal is whether the trial court erred in concluding that Serba was a "passenger of a motorcycle" for purposes of implicating MCL 500.3114(5), thus making the insurer of the owner or registrant of Correa's van, Progressive, the higher-priority insurer. We glean from the plain language of MCL 500.3114(5) that the Legislature intended for subsection (5) to be triggered when there exists a direct correlation between the operation of a motorcycle, the operation of a motor vehicle, injuries arising from an accident involving the motor vehicle, and the injured party's status as the operator or a passenger of the motorcycle.

We do not read subsection (5) so narrowly as to conclude that the motorcycle operator or passenger must incur the bodily injury while sitting or being on the motorcycle. Otherwise, without implicating subsection (5), you could have a scenario in which, for example, a car directly struck a motorcycle on the roadway, which in and of itself did not result in an injury to the motorcycle's operator or passenger, but which did result in the operator or passenger being ejected from the motorcycle *and then* sustaining injury when hitting the roadway's pavement. Clearly, the Legislature contemplated application of MCL 500.3114(5) in that type of scenario. Additionally, we cannot conclude that the plain language of subsection (5) requires the motor vehicle to actually collide with or strike the motorcycle, nor does it require a motor vehicle to actually cause the motorcycle to crash. We find it beyond reasonable dispute that had Serba fallen or been thrown from the motorcycle and then struck almost immediately by a trailing motor vehicle, subsection (5) would be triggered. This is because there would exist, in that hypothetical situation, a direct correlation between the operation of a motorcycle, the operation of a motor vehicle, injuries arising from an accident involving the motor vehicle, and the injured party's status as a passenger of the motorcycle. On the other hand, had Serba fallen or been thrown from the motorcycle, followed by Serba picking herself up from the pavement, moving to the shoulder's roadway, and then walking on the side of the entrance ramp, at which point she was struck by a motor vehicle, we do not believe that subsection (5) would be applicable. This is because there would not exist, in that hypothetical situation, a sufficiently direct correlation between the operation of a motorcycle, the operation of a motor vehicle, injuries arising from an accident involving the motor vehicle, and the injured party's status as a passenger of the motorcycle. The connections would be too tenuous.

The facts in this case fall somewhere between the last two hypothetical scenarios, and we conclude that those facts triggered subsection (5) of MCL 500.3114. While a few minutes had passed since Martin lost control of the motorcycle and Serba was thrown to the pavement, she remained in the roadway, clearly immobilized, when she was struck by Correa's van. Under

those facts, there was a sufficiently direct correlation between the operation of a motorcycle, the operation of a motor vehicle, injuries arising from an accident involving the motor vehicle, and the injured party's status as a passenger of the motorcycle. Accordingly, the trial court properly ruled that MCL 500.3114(5) was applicable and that Progressive, as Correa's insurer, was the higher-priority insurer. Therefore, the trial court did not err in granting summary disposition in favor of Frankenmuth. We find Progressive's arguments to the contrary unavailing.

Affirmed. Having fully prevailed on appeal, we award Frankenmuth taxable costs under MCR 7.219.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Joel P. Hoekstra