*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM AHEE,

　　　　　Plaintiff-Appellee,

v

CITY OF NOVI, NOVI SENIOR
TRANSPORTATION, and TERRY EASTIN,

　　　　　Defendants,

and

AUTO-OWNERS INSURANCE COMPANY,

　　　　　Defendant/Cross-Plaintiff-Appellee,

and

US SPECIALTY INSURANCE COMPANY,

　　　　　Defendant/Cross-Defendant-
　　　　　Appellant.

UNPUBLISHED
March 19, 2019

No. 341072
Oakland Circuit Court
LC No. 2016-152483-NI

Before: GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

　　　In this priority dispute arising under the no-fault act, MCL 500.3101 *et seq*., US Specialty Insurance Company (US Specialty) appeals by leave granted[1] an order granting summary disposition in favor of Auto-Owners Insurance Company (Auto-Owners) based upon the trial

---

[1] *Ahee v City of Novi*, unpublished order of the Court of Appeals, entered April 11, 2018 (Docket No. 341072).

court's conclusion that US Specialty was the insurer of highest priority under MLC 500.3114(2). Because US Specialty's insured, the City of Novi (the City), was not in the business of transporting passengers, we agree that the trial court erred by granting Auto-Owners' motion for summary disposition. Consequently, we reverse the trial court's order and remand for entry of an order granting summary disposition in favor of US Specialty on the issue of priority.

## I. BACKGROUND

Through its Parks, Recreation, and Cultural Services Department, the City operates the Older Adult Services Transportation Program (OASTP). The OASTP provides low-cost transportation services to medical appointments and social activities for City residents 55 years of age and older, as well as younger residents with limiting disabilities. The OASTP receives funding from the City's general fund; the Parks, Recreation, and Cultural Services budget; Suburban Mobility Authority for Regional Transportation; St. John Providence Hospital; vehicle advertising; and the fare box. Passengers schedule transportation in advance and are charged a fee of $3 or $5 depending on the location of the drop-off. Rides to certain designated locations within the City are provided free of charge.

On the morning of July 30, 2015, Terry Eastin was operating a Ford E-350 van equipped with a wheelchair lift, which was owned by the City and dedicated solely to OASTP use. Eastin picked up William Ahee, who was confined to a wheelchair, without incident. After dropping off another passenger, Eastin drove Ahee to St. John Providence Hospital for a doctor appointment. Eastin parked the van, lowered the wheelchair lift to the ground, and unfastened the straps that secured Ahee's wheelchair in place. Forgetting that the wheelchair lift remained on the ground, Eastin pushed Ahee's wheelchair out of the van, causing Ahee and the wheelchair to fall to the ground. Ahee was injured in the fall.

At the time of this incident, Ahee owned a 2010 Ford Focus that was insured by Auto-Owners.[2] Ahee sought no-fault benefits, but Auto-Owners determined that it was not the insurer of highest priority because Ahee was a passenger in a motor vehicle in the business of transporting passengers at the time he was injured. Ahee initiated this lawsuit, naming both US Specialty and Auto-Owners as defendants with respect to his claim for no-fault benefits. After discovery, both insurers moved for summary disposition concerning the issue of priority. The trial court determined that US Specialty was the insurer of highest priority under MCL 500.3114(2) and, therefore, granted Auto-Owners' dispositive motion.

---

[2] Auto-Owners defended the action below, but asserted in its answer to Ahee's complaint and its motion for summary disposition that Home-Owners Insurance Company issued Ahee's insurance policy and was the proper party. By stipulation of the parties, the trial court ordered that the case caption be amended to include Home-Owners Insurance Company, that Auto-Owners be dismissed, and that service of the complaint upon Auto-Owners constituted service upon Home-Owners Insurance Company. However, the trial court continued to refer to Ahee's insurance company as Auto-Owners in its subsequent orders and the parties continued this naming convention on appeal. For the sake of consistency, we will likewise refer to Auto-Owners as plaintiff's insurance company.

## II. STANDARD OF REVIEW

This Court reviews rulings on summary disposition motions de novo. *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 253; 819 NW2d 68 (2012). The trial court granted summary disposition in favor of Auto-Owners pursuant to MCR 2.116(C)(10), which is appropriate "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 7; 792 NW2d 372 (2010) (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "When deciding a motion for summary disposition under this rule, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party." *Bialick v Megan Mary, Inc*, 286 Mich App 359, 362; 780 NW2d 599 (2009).

Statutory interpretation is a question of law subject to de novo review. *Corwin*, 296 Mich App at 253. This Court's main goal in interpreting statutes is to give effect to the intent of the Legislature, as discerned from the common and ordinary meaning of the language of the statute itself. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). "If the statutory language is unambiguous, we presume that the Legislature intended the meaning that it clearly expressed, and further construction is neither required nor permitted." *Id*. at 206. "However, if reasonable minds can differ regarding the statute's meaning, judicial construction is appropriate." *Gauntlett v Auto-Owners Ins Co*, 242 Mich App 172, 177; 617 NW2d 735 (2000).

## III. DISCUSSION

### A. "IN THE BUSINESS OF TRANSPORTING PASSENGERS"

Unless an exception applies, MCL 500.3114(1) provides that an injured party must turn to his or her own insurer for payment of no-fault benefits, regardless of whether the injured party's insured vehicle was involved in the accident. *Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 695; 671 NW2d 89 (2003). At issue in this appeal is the exception set forth in MCL 500.3114(2), which provides, in pertinent part, "A person suffering accidental bodily injury while an operator or a passenger of a motor vehicle operated in the business of transporting passengers shall receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle." US Specialty first argues that MCL 500.3114(2) does not apply to this case because, as a municipality, the City is not in any "business," let alone the "business of transporting passengers." We disagree.

In support of its position,[3] US Specialty relies primarily on opinions from this Court that are either unpublished or published before November 1, 1990, neither of which is binding upon

---

[3] We note that US Specialty also cites a number of cases involving whether a government actor was involved in a proprietary function for purposes of determining whether liability could be imposed under the government tort liability act (GTLA), MCL 691.1401 *et seq*. See, e.g., *Ward*

this Court. MCR 7.215(C)(1) and (J)(1). The only binding authority cited by US Specialty with respect to this issue is *Farmers Ins Exch*, which recognized that dicta in an earlier case suggested that MCL 500.3114(2) "relate[s] to 'commercial' situations." *Farmers Ins Exch*, 256 Mich App at 698 & n 3, quoting *State Farm Mut Auto Ins Co v Sentry Ins*, 91 Mich App 109, 114; 283 NW2d 661 (1979). The Court further observed in a footnote that a more recent panel of this Court had found, in an unpublished opinion, that the term "business" signified a "for-profit endeavor." *Farmers Ins Exch*, 256 Mich App at 701 n 5, citing *Lampman v Workman*, unpublished per curiam opinion of the Court of Appeals, issued March 22, 2002 (Docket No. 225743). But despite acknowledging these occasional references to commercial situations and for-profit endeavors, the *Farmers Ins Exch* Court explicitly adopted what it coined the "primary purpose/incidental nature test" developed in *Thomas v Tomczyk*, 142 Mich App 237; 369 NW2d 219 (1985), as the appropriate standard for determining whether a vehicle was operated in the business of transporting passengers for purposes of MCL 500.3114(2). *Farmers Ins Exch*, 256 Mich App at 701.

In *Thomas*, 142 Mich App 237, this Court considered the meaning of the phrase "in the business of transporting passengers." The case involved a priority dispute with respect to no-fault benefits owed to two students who suffered injuries while passengers in a vehicle driven by a third student and insured by Michigan Educational Employees Mutual Insurance Company (MEEMIC). *Id.* at 239. The passengers each paid the driver $25 for a ride to their home town during the holidays. *Id.* The passengers sought no-fault benefits from MEEMIC, arguing that they were passengers in a motor vehicle operated in the business of transporting passengers. *Id.* at 239-240. The trial court dismissed their claims against MEEMIC, reasoning that

> it wasn't the primary function of the driver to carry passengers for hirer [sic], he's a student, as far as I can tell. And it is not the primary purpose of the vehicle to carry passengers for hirer [sic], it just happened that incidental to coming home, it was convenient to take on passengers . . . . [*Id.* at 240 n 2 (quotation marks omitted; alterations in original).]

Without detailed analysis, this Court affirmed the dismissal, concluding that "college students [who] pay other college students for the privilege of carpooling home for the holidays . . . [are] not passengers of 'a motor vehicle operated in the business of transporting passengers'." *Id.* at 241-242.

As already noted, the *Farmers Ins Exch* Court later approved of and adopted the analysis of the trial court in *Thomas*, concluding that it accurately encompassed the legislative intent of MCL 500.3114(2). *Farmers Ins Exch*, 256 Mich App at 700-701. Importantly, neither the statutory language of MCL 500.3114(2) nor the opinions in *Farmers Ins Exch* or *Thomas* mandate that the vehicle in question must be operated by a commercial or for-profit entity.

---

*v Mich State Univ (On Remand)*, 287 Mich App 76; 782 NW2d 514 (2010); *Hyde v Univ of Mich Bd of Regents*, 426 Mich 223; 393 NW2d 847 (1986). These cases are inapposite because this case does not turn on the question of governmental tort immunity or whether the government is engaged in activity for the primary purpose of producing pecuniary profit.

Instead, the relevant inquiries under the primary purpose/incidental nature test are (1) whether the transportation of passengers is the primary purpose for which the vehicle is used and (2) whether the transportation of passengers is a primary, as opposed to incidental, component of the overall business or activity of the operator. See *id*. at 700-702 (finding that children injured in daycare provider's vehicle were not entitled to coverage under MCL 500.3114(2) where vehicle was primarily used as daycare provider's personal vehicle and transportation of children was an incidental or small part of daycare business); *Thomas*, 142 Mich App at 240 n 2, 241-242 (finding that college student who drove other students home was not in the business of transporting passengers because neither the student nor the vehicle were primarily engaged in transporting passengers for hire and carpool arrangement was undertaken as a matter of convenience).

This conclusion is consistent with the well-established principle that "[a] court must give effect to every word, phrase, and clause, and avoid an interpretation that renders any part of a statute nugatory or surplusage." *Cadwell v Highland Park*, 324 Mich App 642, 651; ___ NW2d ___ (2018) (quotation marks and citation omitted; alteration in original). When a person is injured in a vehicle operated in the business of transporting passengers, MCL 500.3114(2) provides that the injured party must turn to the insurer of the vehicle for no-fault benefits, unless the person was a passenger in a specified type of vehicle.[4] Among the vehicles that are excepted from MCL 500.3114(2) are buses operated by or providing service to a nonprofit organization. MCL 500.3114(2)(d). If we construed the relevant language in the manner urged by US Specialty, MCL 500.3114(2)(d) would be rendered nugatory because no vehicle operated by a non-profit entity would trigger coverage under MCL 500.3114(2) and, thus, no exception for such buses would be necessary. Similarly, the exception for buses operating under a government sponsored transportation program, MCL 500.3114(2)(c), would be surplusage if a government entity could never be "in the business of transporting passengers." Because we are charged with avoiding such an interpretation, *Cadwell*, 324 Mich App at 651, we reject US Specialty's contention that a vehicle must be operated by a commercial, for-profit entity in order to trigger an insurer's priority under MCL 500.3114(2).

## B. PRIMARY PURPOSE/INCIDENTAL NATURE TEST

Turning to application of the primary purpose/incidental nature test, the trial court determined that the sole use of the vehicle was for transporting passengers, and US Specialty does not appear to dispute that conclusion. Indeed, the evidence demonstrates that there is no genuine issue of fact on this point. The OASTP operates a fleet of several vehicles, and the City admitted that the Ford E-350 at issue "was obtained for the purpose of transporting eligible City residents in connection with the [OASTP]."

US Specialty's claim of error arises from the trial court's analysis of the second prong of the primary purpose/incidental nature test, which examines whether the transportation of

---

[4] At the time Ahee was injured, MCL 500.3114(2) had six listed exceptions. It has since been amended by 2016 PA 347, effective March 21, 2017, to include a seventh exception for passengers in a "transportation network company vehicle." MCL 500.3114(2)(g).

passengers is a primary or incidental component of the operator's overall business or activities. See *Farmers Ins Exch*, 256 Mich App at 700-702. In analyzing this inquiry, the trial court relied exclusively on this Court's opinion in *State Farm Mut Auto Ins Co v Progressive Mich Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued September 29, 2005 (Docket No. 262833). In that case, the defendant insured a vehicle owned by an adult daycare. *Id*. at 1. The van was equipped to transport a wheelchair-bound passenger and five or six other passengers. *Id*. The daycare used the van to transport clients between their homes and the daycare facility, as well as for field trips. *Id*. After a client was injured in the van, a priority dispute arose between plaintiff—an insurance carrier that issued a policy to a resident of the client's household—and defendant, the insurer of the van. *Id*. at 1-2. This Court determined that defendant was the insurer of highest priority under MCL 500.3114(2) because the insured daycare purchased the van for the specific purpose of transporting its clients and, "[w]hile transporting passengers was not the primary purpose of [the insured], it was a significant enough component for [the insured] to provide the transportation in a specially equipped vehicle, owned and operated by the business and insured according to the commercial requirements established by the Area Agency on Aging that referred clients to the business." *Id*. at 3.

The trial court in the instant case determined that "there can be no question as to the second element," because, like the van in *State Farm Mut Auto Ins*, the City's transportation program was important enough for it to purchase and equip a vehicle for that specific purpose. US Specialty argues on appeal that the trial court erred by failing to recognize that the OASTP was but a small program run by a single department of the City's large organizational structure. US Specialty maintains that the transportation services the City facilitates through the OASTP are incidental to the City's main function of operating as a government entity. We agree.

We acknowledge that there are certain similarities between the transportation service provided by the OASTP and the transportation provided by the daycare provider in *State Farm Mut Auto Ins Co*, unpub op at 1. Nonetheless, this case is distinguishable in that the daycare provider's overall business was centered on providing services to adults who were disabled or had other special needs. *Id*. The transportation service was an important part of the overall business because it enabled the daycare's clientele to travel to and from the facility and attend field trips. *Id*. In contrast, the City's operations did not solely cater to the elderly or disabled residents the OASTP served, nor were the OASTP's services necessary to the City's operations. According to its charter,

> The City and its officers shall have power to exercise all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be herein expressly enumerated or not; to do any act to advance the interests of the City, good government and prosperity of the municipality and its inhabitants; to make and enforce all laws, ordinances and resolutions which shall be necessary and proper for carrying into execution the foregoing powers and all other powers vested by the Constitution and Statutes of the State of Michigan in cities, except where forbidden, or where the subject is covered exclusively by a general law. The City and its officers should have power to provide for the public peace and health and for the safety of persons and property and to provide that the levy[,] collection and return of state, county, and school taxes shall be in conformity with the general laws of the state

except that the preparation of the assessment roll, the meeting of the Board of Review, and the confirmation of the assessment roll shall be as provided by this Charter. [Novi Charter, § 2.1 (alteration in original).]

In light of the foregoing, we agree with US Specialty's contention that the City's primary function is to provide for the health, safety, and welfare of the municipality and its residents. While the OASTP may fit within the large scope of that function, it serves only a fraction of the City's residents and accounts for an insignificant portion of the City's activities.

Accordingly, because transportation of passengers was incidental to the City's primary function, we conclude that the City is not in the business of transporting passengers for purposes of MCL 500.3114(2).[5] Having so concluded, we need not address US Specialty's remaining argument regarding the applicability of exceptions to MCL 500.3114(2).

## IV. CONCLUSION

In sum, because the transportation of passengers was incidental to the City's overall activity of governing, Ahee was not injured as a passenger in a vehicle operating in the business of transporting passengers. Therefore, US Specialty is not the insurer of highest priority under MCL 500.3114(2). Instead, Auto-Owners, as Ahee's personal insurance carrier, is obligated to pay any no-fault benefits to which he may be entitled as a result of his July 30, 2015 injuries pursuant to MCL 500.3114(1). We reverse the trial court's order granting Auto-Owners' motion for summary disposition and remand for entry of an order granting summary disposition in favor of US Specialty on the issue of priority. As the prevailing party, US Specialty may tax costs. MCR 7.219. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Anica Letica

---

[5] As US Specialty observed at oral argument, we acknowledge that this case is factually similar to the circumstances involved in a recent opinion issued by this Court. See *MIC Gen Ins Corp v Mich Muni Risk Mgt Auth*, unpublished per curiam opinion of the Court of Appeals, issued October 18, 2018 (Docket No. 341766). In that case, a passenger in a medical transportation vehicle owned and operated by the Mecosta County Commission on Aging (MCCOA) was injured in a motor vehicle accident. This Court determined that the transportation of passengers was "a primary and not incidental component of MCCOA's mission, and MCL 500.3114(2) applies." *Id*. at 6. The case at hand is distinguishable. In *MIC Gen Ins Corp*, this Court rejected arguments that focused on Mecosta County's business activities because the MCCOA, and not the county, was the title owner of the vehicle in question and responsible for purchasing and operating the vehicles used in the transportation program. *Id*. at 5. Here, the City—and not the OASTP—was the title owner of the van and the specific entity insured by US Specialty's policy.