*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEITH SMITH,

        Plaintiff-Appellee,

and

BEAUMONT HEALTH,

        Intervening Plaintiff-Appellee

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN, and FARM BUREAU
GENERAL INSURANCE COMPANY OF
MICHIGAN,

        Defendants-Appellants,

and

MOTORISTS COMMERCIAL MUTUAL
INSURANCE COMPANY,

        Defendant-Appellee,

and

MICHIGAN ASSIGNED CLAIMS PLAN, and/or
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

        Defendants.

FOR PUBLICATION
March 13, 2025
2:12 PM

No. 369139
Wayne Circuit Court
LC No. 21-003289-NF

Before: YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Keith Smith, was receiving a ride home from a car dealership's shuttle van service when the shuttle van was involved in an automobile accident. Smith suffered injuries requiring physical therapy and, eventually, surgery. Smith filed a claim for no-fault insurance benefits against defendants Farm Bureau General Insurance Company of Michigan and Farm Bureau Mutual Insurance Company of Michigan (collectively "Farm Bureau"), Motorists Commercial Mutual Insurance Company ("Motorists"), and the Michigan Automobile Insurance Placement Facility ("MAIPF").[1] The question before us on appeal is whether the dealership's shuttle van service is considered a "motor vehicle operated in the business of transporting passengers" under MCL 500.3114(2). We reverse and remand because there remains a genuine issue of material fact in this regard.

## I. FACTUAL HISTORY

This case is a no-fault priority dispute. On April 28, 2020, Smith towed his vehicle to the George Matick Chevrolet Dealership in Redford Township, Michigan. While he was waiting for his vehicle to be serviced, a dealership employee, Michael Lamoureaux, offered him a ride home in the dealership's shuttle van service.[2] As Smith was being driven home as a passenger in the dealership's white Chevrolet Express G2 Van with "Matick Chevrolet" and the dealership's address written on the side, the van rear-ended a vehicle at the intersection of Schoolcraft Road and Telegraph Road. Lamoureux called the dealership to report the accident, and both drivers headed to the police station to make a police report. After they made a police report, Lamoureux drove Smith home. No injuries were reported at the scene of the accident. Nevertheless, Smith's wife, Stacey Smith, drove him to the emergency room at Beaumont Hospital in Farmington that same day. Smith began feeling "excruciating pain" two days later. Smith sustained injuries to his lower back and neck, wore a neck brace, and saw a chiropractor and physical therapist for more than a year after the accident. Smith eventually required surgery.

The dealership insured the shuttle van involved in the accident through Motorists. At the time of the accident, Smith lived with Stacey, who owned a 2017 Chevrolet Equinox insured with Farm Bureau.[3] Smith received resident relative coverage from Farm Bureau through Stacey. Smith did not maintain insurance on his own vehicle, hence his March 2021 application for benefits to defendant MAIPF under MCL 500.3172.

## II. PROCEDURAL HISTORY

Smith filed a first-party claim for no-fault insurance benefits against Farm Bureau, MAIPF, and Motorists (Counts I-III). MAIPF moved for summary disposition under MCR 2.116(C)(10)

---

[1] Intervening Plaintiff-Appellant, Beaumont Health, intervened in the lower court under MCL 500.3112 but does not participate in this appeal.

[2] Smith had already used the George Matick Chevrolet shuttle van service once before.

[3] The two are now divorced.

arguing that under MCL 500.3114(1),[4] because Smith lived with his wife Stacey who owned a vehicle insured with Farm Bureau, there was no scenario in which MAIPF would be in the order of priority. MAIPF argued Smith also had a viable claim against Motorists as the insurer of the shuttle van under MCL 500.3114(2). Because other insurance coverage could be identified, MCL 500.3172, MAIPF argued it should be dismissed from Smith's cause of action.

Farm Bureau responded to MAIPF's motion for summary disposition, stating it took no position on the motion but maintained MAIPF was in the order of priority. Farm Bureau also argued Motorists was first in the order of priority under MCL 500.3114(2) and thereby responsible for Smith's claims. Farm Bureau simultaneously moved for summary disposition under MCR 2.116(I)(2) (opposing party entitled to summary disposition), also asking the trial court to dismiss Smith's claims against it. Farm Bureau relied on the "primary purpose/incidental nature test" laid out in *Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 701; 671 NW2d 89 (2003), to argue the primary purpose of the dealership's shuttle van was to transport customers to and from their desired destination to the dealership, and that "such service is an integral amenity to the dealership's services – the dealership advertises that it provides transportation services to its customers on its website, and numerous [Google] reviews confirm shuttle services are offered."

Several exhibits were attached to the motion, including screenshots of Matick Chevrolet's website, which Farm Bureau argued advertised the shuttle van service.[5] Farm Bureau also provided the trial court with screenshots of over 20 Google reviews mentioning the shuttle van service. Some customers left complaints of long wait times because of the dealership's COVID-19 policy of only driving one person/family at a time, while others were grateful for the shuttle service. However, there was nothing in the record to support Farm Bureau's assertion in its countermotion that customers choose to service their vehicles with George Matick Chevrolet over small mom and pop shops because the shuttle service was offered.[6]

Motorists responded to MAIPF's motion under MCR 2.116(C)(10) and Farm Bureaus' countermotion under MCR 2.116(I)(2), arguing the dealership's business "is to sell new and used vehicles and to perform vehicle maintenance and repairs. A very small and incidental part of Matick's business is to provide courtesy rides to customers (like [Smith]) when their vehicles are being serviced or repaired." Motorists stated the dealership is not a transportation company, and

---

[4] Under MCL 500.3114(1), a person claiming personal injury protection (PIP) benefits looks first to his or her own policy, then to a spouse's policy, and lastly to a resident relative's policy, subject to a few listed exceptions.

[5] Reviewing the screenshots, there is no mention of the shuttle van service on the website, but the website advertised free rental vehicles for body shop clients.

[6] On appeal, Farm Bureau attached additional screenshots of George Matick Chevrolet's website, specifically the webpage about its body shop services, which advertises "Free Pickup & Delivery Service." Screenshots of this webpage were not included in the lower court record, so we decline to review them on appeal. See *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009) ("[R]eview is limited to the evidence that had been presented to the circuit court at the time the motion was decided.").

Smith paid nothing for the courtesy ride in the shuttle van. Motorists also provided the affidavit of Matick Chevrolet Vice President Paul Zimmerman. Zimmerman averred the dealership's primary business is to sell new and used cars, and service and repair cars. The shuttle van service is a courtesy to customers, and does not independently generate any revenue for the dealership. Zimmerman also averred the shuttle van service is not an integral or large part of the dealership's actual business, but is incidental to what the dealership does. Smith also responded, and asked the trial court to order either Farm Bureau or Motorists to indemnify him for losses he sustained in the accident. The trial court granted MAIPF's motion for summary disposition without oral argument, deciding MAIPF was dismissed with prejudice because two other identifiable insurers, Farm Bureau and Motorists, existed.

Lamoureaux and Zimmerman were then deposed.[7] After this additional discovery, and MAIPF's dismissal, Farm Bureau moved for summary disposition under MCR 2.116(C)(10), offering the same arguments made in its countermotion under MCR 2.116(I)(2), summarized above. The motion and brief in support did not include new information obtained from Zimmerman and Lamoureaux's depositions. Smith responded, relying on the trial court's discretion to determine insurer priority and whether MCL 500.3114(2) applied. After considering the matter without oral argument, the trial court denied Farm Bureau's motion for summary disposition, reasoning in a praecipe order as follows: "Farm Bureau is first in priority to pay PIP benefits as the transportation of customers to/from the dealership is ancillary to the [dealership]'s primary business which would render MCL 500.3114(2) inapplicable." This took Motorists out of the order of priority.

Farm Bureau filed an initial application for leave to appeal in this Court on September 1, 2022, relying on the same arguments it made in its countermotion for summary disposition under MCR 2.116(I)(2), summarized above, which were identical to those made in its motion under MCR 2.116(C)(10).[8] However, Farm Bureau cited new evidence on appeal, such as portions of the deposition testimony of Zimmerman and Lamoureaux, that it failed to specifically present to the trial court. The application was denied for failure to persuade this Court of a need for immediate appellate review. *Keith Smith v Farm Bureau Gen Ins Co of Mich*, unpublished order of the Court of Appeals, entered February 13, 2023 (Docket No. 362816).

---

[7] Zimmerman's deposition transcript was filed under seal pursuant to MCR 2.302(C)(8) ("that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way"), and MCR 2.302(C)(9)(b) ("Materials that are subject to a protective order entered under MCR 2.302(C) may be submitted for inclusion in the Court of Appeals file in sealed form if they are accompanied by a copy of the protective order."). Because the deposition contains confidential commercial information, we have omitted the facts obtained from reviewing the deposition from this opinion but nonetheless consider them in rendering a decision. However, Lamoureaux's deposition transcript was not appended to any motion or response in the lower court record, so we decline to review it on appeal. *Innovative Adult Foster Care, Inc*, 285 Mich App at 476.

[8] The trial court entered a stipulated order to stay the matter pending the appeal.

After leave to appeal was denied, the trial court lifted the stay in this matter and ordered that Farm Bureau remained highest in priority to pay Smith's benefits. The trial court dismissed Motorists without prejudice. After the case was sent to facilitation, the trial court entered an order dismissing Smith's and Beaumont Health's claims against Farm Bureau with prejudice. This final order closed the case. Farm Bureau now appeals as of right.

## III. ANALYSIS

### A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of the plaintiff's claim, is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citation omitted). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), this Court should consider the parties' documentary evidence in the light most favorable to the party opposing the motion. *Johnson*, 502 Mich at 761. "[R]eview is limited to the evidence that had been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

"To the extent that resolution of this issue involves statutory interpretation, [this Court reviews] de novo whether the circuit court properly interpreted and applied the relevant statutes." *Wiesner v Washtenaw Co Community Mental Health*, 340 Mich App 572, 580; 986 NW2d 629 (2022) (citation omitted). "The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent." *Id*.

### B. A GENUINE ISSUE OF MATERIAL FACT REMAINS AS TO WHETHER THE SHUTTLE VAN IS "A MOTOR VEHICLE OPERATED IN THE BUSINESS OF TRANSPORTING PASSENGERS"

The fundamental question on appeal is whether the trial court erred in determining Farm Bureau has priority to pay Smith's PIP benefits under the Michigan No-Fault Act's, MCL 500.3101 *et seq*., general priority rule, MCL 500.3114(1), and whether the listed exception in MCL 500.3114(2) applies. Farm Bureau, with support from amicus curiae MAIPF, argues the plain language of MCL 500.3114(2) applies where a passenger is injured while being transported in a car dealership's shuttle van service. We hold the trial court erred because there remains a genuine dispute of material fact in this regard.

When a person is injured in a motor vehicle accident, the first step in a coverage determination is found in MCL 500.3114(1), which creates the highest priority for motor vehicle occupants. MCL 500.3114(1) states:

> Except as provided in subsections (2), (3), and (5), a personal protection insurance
> policy described in section 3101(1) applies to accidental bodily injury to the person

-5-

named in the policy, the person's spouse, and a relative of either domiciled in the
same household, if the injury arises from a motor vehicle accident.

Thus, a person claiming PIP benefits looks first to his or her own policy, then a spouse's policy, and finally, a resident relative's policy. However, MCL 500.3114(1) expressly provides that resident relative coverage is secondary to the exceptions set forth in subsections (2), (3), and (5). MCL 500.3114(2), the relevant exception in this case, states: "A person who suffers accidental bodily injury while an operator or *a passenger of a motor vehicle operated in the business of transporting passengers* shall[9] receive the personal protection insurance benefits to which the person is entitled from the insurer of the motor vehicle." (Emphasis added.)

Initially, this Court interpreted § 3114(2) to apply to "commercial" situations. *State Farm Mut Auto Ins Co v Sentry Ins*, 91 Mich App 109,114; 283 NW2d 661 (1979).[10] *Sentry Ins* went on to explain how § 3114(2) would ensure speedy recovery of benefits without the need for extensive litigation:

> It was apparently the intent of the Legislature to place the burden of providing no-fault benefits on the insurers of these motor vehicles, rather than on the insurers of the injured individual. This scheme allows for predictability; coverage in the "commercial" setting will not depend on whether the injured individual is covered under another policy. A company issuing insurance covering a motor vehicle to be used in a [§ 3114](2) [] situation will know in advance the scope of the risk it is insuring. The benefits will be speedily paid without requiring a suit to determine which of the two companies will pay what is admittedly due by one of them. [*Id*. at 114-115.]

Nevertheless, this Court held in *Farmers Ins Exch* that the statutory phrase "in the business of transporting passengers" did not have a "clear and unambiguous meaning." *Farmers Ins Exch*, 256 Mich App at 697. When interpreting MCL 500.3114(2), this Court held that a "primary purpose/incidental nature test is to be applied to determine whether at the time of an accident a motor vehicle was operated in the business of transporting passengers pursuant to subsection 3114(2)." *Farmers Ins Exch*, 256 Mich App at 701. In *Farmers Ins Exchange*, the issue was whether a personal vehicle used by a for-profit day-care provider who was transporting children fell within the purview of § 3114(2). *Id*. at 693-694. This Court held the vehicle was not a vehicle in the business of transporting passengers because "(1) her driving of the children to school in her

---

[9] The use of the word "shall" in statutory language indicates mandatory conduct. *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 114; 845 NW2d 81 (2014).

[10] Although this Court is required to follow cases decided on or after November 1, 1990, see MCR 7.215(J)(1), a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2). See also *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018), (stating that although we are not "strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990," those opinions are nonetheless "considered to be precedent and entitled to significantly greater deference than are unpublished cases") (emphasis omitted).

vehicle occurred incidentally to the vehicle's primary use as a personal vehicle, and (2) her transportation of the children to and from school constituted an incidental or small part of her day-care business." *Id*. at 701-702. From this, the "primary purpose/incidental nature test" was born. The relevant inquiries under the "primary purpose/incidental nature test" are (1) whether the transportation of passengers is the primary purpose for which the vehicle is used and (2) whether the transportation of passengers is a primary, as opposed to incidental, component of the overall business or activity of the operator. If answered affirmatively, a motor vehicle is "in the business of transporting passengers." *Id.* at 700-702.

In this case, under the first prong of the test, even considering the deposition of Matick Chevrolet Vice President Paul Zimmerman, there is no genuine dispute of material fact that the primary purpose of Matick Chevrolet's shuttle vans is the transportation of passengers to and from the dealership. Motorists has not presented any evidence in the trial court to refute that this is the near-exclusive purpose of the shuttle vans. When Motorists insured these vehicles, it had the opportunity to assess the risk of paying out benefits to injured passengers because Motorists knew it was insuring a shuttle van service regularly transporting passengers to and from the dealership. *Sentry Ins*, 91 Mich App at 114-115.

Where a genuine dispute of fact remains is with the second prong—whether transporting passengers is a primary component of the overall business of Matick Chevrolet. Zimmerman averred the dealership's primary business is to sell new and used cars, and service and repair cars, and that "[t]he dealership generates revenue through selling cars and by performing service and repairs." The shuttle van service is courtesy to customers, and did not generate any revenue for the dealership. Zimmerman also averred the shuttle van service is not an integral or large part of the dealerships actual business, but is incidental to what the dealership does. Zimmerman estimated only 10-15% of the dealership's service and repair customers use the shuttle van service, but conceded the dealership did not maintain any data on this figure. From this estimation, counsel for Farm Bureau tried to elicit testimony that George Matick Chevrolet relied on the shuttle van service to generate a certain percentage of revenue by attracting service and repair customers, despite that the service was a free amenity. Zimmerman denied any assertion that the shuttle van service generated any calculable revenue for the dealership.

On the other hand, Farm Bureau presented over 20 Google reviews mentioning the dealership's shuttle van service, indicating the service is regularly offered and regularly provided. Smith also used the shuttle van service more than once—on the day of the accident, it was Smith's second time using the service. And as Farm Bureau observes in its reply brief on appeal, the dealership even kept the shuttle van service running during the height of the COVID-19 pandemic, evidencing it was considered essential to the dealership's basic function. Viewing the facts in the light most favorable to Motorists, the non-moving party, a genuine issue of material fact exists regarding whether the second prong of the "primary purpose/incidental nature" test is met. This is because, based on the record, reasonable minds might disagree about whether the shuttle van service is a primary or incidental component of the dealership's overall business. *Johnson*, 502 Mich at 761. Thus, we reverse the trial court's order denying Farm Bureau summary disposition, and remand this case for a trier of fact to determine whether MCL 500.3114(2) applies.

## IV. CONCLUSION

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle